EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* RAMÓN RÍOS DÁVILA y OTROS, demandados y recurridos.

*Números:* CC-95-136     *Resueltos:* 30 de junio de 1997
CC-95-158
CT-96-2

690

*Carlos Lugo Fiol, Procurador General, y Mayra J. Serrano Borges, Procuradora General Auxiliar*, abogados de El Pueblo; *Luis A. Pérez Bonilla*, de la *Sociedad para Asistencia Legal*, abogado de los recurridos.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

Quien cumple una *medida dispositiva de custodia* y se evade de la *institución juvenil*, ¿comete la falta del *delito de fuga* del Art. 232 del Código Penal, 33 L.P.R.A. sec. 4428? Antes de contestar a esta interrogante, expongamos suscintamente el transfondo fáctico y procesal de estos recursos consolidados.

A. *Pueblo de P.R. v. Ramón Ríos Dávila, Caso Núm. CC-95-136*

Ríos Dávila cumplía una medida dispositiva de custodia en el Hogar Juvenil de Ponce por faltas cometidas mientras era menor de edad, que eran equivalentes a los delitos de escalamiento agravado, daños y sustancias controladas.

Recibió un pase el 23 al 26 de noviembre de 1994 para visitar a su madre. Al finalizar el período de pase, no regresó al hogar juvenil. Posteriormente fue detenido y, el 16 de febrero de 1995, el Ministerio Público presentó una acusación por el delito grave de fuga, Art. 232 del Código Penal, *supra*, según enmendado. Para la fecha de los hechos, Ríos Dávila tenía dieciocho (18) años.[1]

Ríos Dávila solicitó la desestimación de la acusación al amparo la Regla 64(a) de Procedimiento Criminal, 33 L.P.R.A. Ap. II. Alegó que la acusación no configuraba el delito de fuga, toda vez que estaba cumpliendo como menor por haber cometido una falta, no un delito. El ilustrado Tribunal de Primera Instancia, Sala de Ponce (Hon. Francisco Ortiz Rivera, Juez), desestimó. El Procurador General acudió mediante *certiorari* al Tribunal de Circuito de Apelaciones.

El 4 de octubre de 1995, el reputado foro apelativo (Hons. Sánchez Martínez, Córdova Arone y Segarra Olivero, Jueces) resolvió que existe una "imposibilidad absoluta de que un individuo —haya alcanzado o no la mayoría de edad— incurriera en el delito de fuga mientras cumplía en una institución juvenil la medida dispositiva que le fuera impuesta". Apéndice, pág. 97. Razonó que un menor que haya sido sometido a una medida dispositiva en una institución juvenil no se encuentra sometido a *pena de reclusión*, elemento indispensable del delito de fuga, según el Art. 232 del Código Penal, *supra*. Concluyó, además, que el Tribunal de Menores[2] carecía de jurisdicción para procesarlo, pues ya había cumplido dieciocho (18) años, según lo dispuesto en el Art. 4 de dicho cuerpo legal, 34 L.P.R.A. sec. 2204. Inconforme, vino ante nos el Procurador General.

B. *Pueblo de P.R. v. Pedro Valdés Kercadó, Caso Núm. CC-95-158*

Valdés Kercadó se encontraba de pase mientras cumplía

---

[1] Según la denuncia presentada nació el 29 de septiembre de 1976.

[2] Ley Núm. 88 de 9 de julio de 1986 (34 L.P.R.A. sec. 2201 *et seq.*).

una medida dispositiva de custodia en el Centro de Tratamiento Social para Jóvenes de Ponce (en adelante el Centro), por una falta equivalente a una infracción a la Ley para la Protección de Propiedad Vehicular, 9 L.P.R.A. sec. 3201 *et seq.* Debía regresar al Centro el 20 de septiembre de 1994. No lo hizo. El 22 de septiembre de 1994 fue detenido y el Ministerio Público presentó una querella ante el Tribunal de Primera Instancia, Sala de Menores de Ponce, por falta equivalente al delito de fuga, Art. 232 del Código Penal, *supra.*

El 1ro de noviembre de 1994, Valdés Kercadó volvió a evadirse del Centro donde cumplía otra medida dispositiva, ahora por infracción a la Ley de Sustancias Controladas de Puerto Rico. El 13 de noviembre, el Ministerio Público presentó una nueva querella por falta equivalente al delito de fuga agravada. Al momento de estos hechos tenía dieciséis años (16) años de edad.(³) El 3 de abril de 1995, el Tribunal de Asuntos de Menores *renunció* a su jurisdicción. El 20 de abril, el Ministerio Público presentó dos (2) acusaciones en su contra por el delito de fuga.

Valdés Kercadó también solicitó la desestimación. En síntesis, argumentó que al momento de evadirse del Centro no era convicto por sentencia, elemento indispensable para que se configurara el delito de fuga del Art. 232 del Código Penal, *supra*, y, por lo tanto, el principio de legalidad impedía su procesamiento por ese delito. El Ministerio Público se opuso.

El 30 de octubre de 1995, fecha del juicio, el ilustrado Tribunal de Primera Instancia, Sala de Ponce (Hon. Eliadís Orsini Zayas, Juez), declaró *sin lugar* la moción de desestimación. Resolvió que los menores están sujetos a la acción penal tipificada en el Código Penal, pues la diferencia entre delito y falta, y sentencia y medida dispositiva, era meramente en el nombre que se les daba en cada procedimiento. Por lo tanto, la situación legal del menor y el adulto es la misma. Concluyó que no se violaba el prin-

---

(³) Según las denuncias, nació el 8 de diciembre de 1977.

cipio de legalidad. De dicha denegatoria acudió Valdés Kercadó al Tribunal de Circuito de Apelaciones. Estando pendiente de resolución, el 21 de diciembre de 1995 el Procurador General nos solicitó la certificación intrajurisdiccional del recurso. Accedimos.

### C. *Pueblo de P.R. v. Ángel González Burgos, Caso Núm. CC-95-158*

González Burgos estaba bajo custodia por falta equivalente al delito de agresión. El 10 de diciembre de 1994 se evadió del Centro. El 28 de diciembre de 1994, el Ministerio Público presentó querellas por faltas equivalentes a los delitos de fuga agravada y daños ocasionados al Centro. Al momento de los hechos, González Burgos tenía dieciséis (16) años de edad.[4]

El 14 de junio de 1995, el Tribunal de Primera Instancia, Sala de Asuntos de Menores de San Juan, renunció su jurisdicción por dichas querellas y otros delitos cometidos mientras estaba evadido.[5] El 9 de agosto de 1995, el Ministerio Público presentó denuncias por los delitos de fuga y daños. González Burgos solicitó la desestimación de la acusación por el delito de fuga. Alegó que no se configuró dicho delito, pues cumplía una *medida dispositiva* y no una sentencia. El Tribunal de Primera Instancia, Sala de Ponce (Hon. Eliadís Orsini Zayas, Juez), se negó a desestimar. Concluyó que no se infringió el principio de legalidad, pues la conducta ilegal tipificada en el delito de fuga constituye suficiente aviso a todos los menores de su ilegalidad; no adolece de vaguedad. Entendió que la diferencia entre un proceso criminal regular y el estatuido por la Ley de Menores de Puerto Rico es en el contexto de las salvaguardas procesales a todo menor, no en el aspecto sustantivo. Con-

---

[4] Según las querellas presentadas nació el 8 de febrero de 1978.

[5] A saber: robo, Art. 256 del Código Penal, 33 L.P.R.A. sec. 256; dos (2) cargos por el Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404; Art. 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 418; robo de auto, Secs. 3-301 y 5-902 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. secs. 721 y 1074, y Art. 6 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 416.

cluyó que un menor, mientras cumple una medida dispositiva de custodia, *está confinado*, por lo cual puede ser imputado y juzgado por el delito de fuga.

En *certiorari*, González Burgos acudió al Tribunal de Circuito de Apelaciones. Pendiente dicho recurso, vino ante nos el Procurador General mediante certificación. Expedimos.

D. *Pueblo de P.R. v. Juan M. Rodríguez Rivera, Caso Núm. CC-95-158*

Rodríguez Rivera cumplía una medida dispositiva de custodia en el Centro por falta equivalente al delito de robo. El 10 de diciembre de 1994 se evadió. Al momento de esos hechos, Rodríguez Rivera contaba con dieciocho (18) años de edad.([6]) Oportunamente, el 2 de agosto de 1995, el Ministerio Público presentó una acusación por el delito de fuga.

En la vista en su fondo, Rodríguez Rivera solicitó su desestimación bajo el fundamento de que no se configuró el delito de fuga. El Tribunal de Primera Instancia, Sala de Ponce (Hon. Miguel A. Santiago Gómez, Juez), desestimó. El Procurador General acudió, mediante un recurso de *certiorari*, al Tribunal de Circuito de Apelaciones.

El 15 de noviembre, dicho foro dictaminó que se planteaba la misma controversia que en el caso de Ríos Dávila, y declaró sin lugar el recurso. Acudió ante nos el Procurador General, mediante un *certiorari*.

El 28 de diciembre de 1995 ordenamos al Tribunal de Circuito de Apelaciones que nos remitiera los autos originales en los casos *Pueblo de P.R. v. Rodríguez Rivera, Valdés Kercadó y González Burgos*, y paralizamos los procedimientos en dicho tribunal.

E. *Pueblo de P.R. v. José Bobé Torres, Caso Núm. CT-96-2*

Bobé Torres estaba bajo custodia en el Centro por falta equivalente a una infracción a la Ley de Sustancias Con-

---

([6]) Según la denuncia nació el 11 de octubre de 1976.

troladas de Puerto Rico. Mientras fue trasladado al Hospital Tricoche para recibir tratamiento por unas lesiones sufridas en el Centro, Bobé Torres se evadió. El Ministerio Público lo acusó por el delito de fuga. Al momento de los hechos, Bobé Torres contaba con dieciocho (18) años de edad.([7])

Al igual que los otros, Bobé Torres solicitó su desestimación en virtud de la Regla 64 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Alegó que no se tipificaba el delito de fuga porque se evadió de una institución de menores. El ilustrado Tribunal de Primera Instancia, Sala de Ponce (Hon. Ramón L. Pola Pérez, Juez), desestimó. A solicitud del Procurador General, el 12 de abril de 1996, expedimos un auto de certificación intrajurisdiccional.

## II

■ Primeramente, ninguno de los acusados Ríos Dávila *et al.* puede ser juzgado bajo la Ley de Menores de Puerto Rico, Ley Núm. 88 de 9 de julio de 1986, según enmendada, 34 L.P.R.A. sec. 2201 *et seq.* De sus expedientes surge que Ríos Dávila, Rodríguez Rivera y Bobé Torres habían cumplido dieciocho (18) años de edad al momento de los hechos que motivaron las acusaciones. La jurisdicción para procesar menores atañe a faltas cometidas *antes* de éstos haber cumplido dieciocho (18) años. Art. 4(a) de la Ley de Menores de Puerto Rico, 34 L.P.R.A. sec. 2204(a).

Por otro lado, en cuanto a Valdés Kercadó y González Burgos, a pesar de tener sólo dieciséis (16) años al momento de sus conductas delictivas, el Tribunal de Menores renunció a su jurisdicción. Art. 15(B) de esta ley, 34 L.P.R.A. sec. 2215(b). *Todos deberán ser juzgados como adultos.*

Sostiene el Procurador General que la conducta señalada —evadirse de las instituciones juveniles donde cumplían medida dispositiva de custodia— contiene todos los

---

([7]) Según la denuncia nació el 29 de noviembre de 1976.

elementos constitutivos del delito de fuga, según tipificado en el Art. 232 del Código Penal, *supra.*

Por su parte, Ríos Dávila, *et al.* alegan que el citado Art. 232 del Código Penal no dispone la evasión de un menor de una institución juvenil en que estaba ingresado para cumplir una medida dispositiva por cometer una falta. Razonan que el delito de fuga requiere que la persona esté en *detención preventiva,* cumpliendo una *sentencia firme,* en *trámite de apelación* por una convicción de delito, o recluido mediante una *medida de seguridad de internado.* Plantean que debido a la naturaleza del proceso contra menores y las medidas que le son impuestas, no se les imputa delito, sino faltas, como tampoco se les impone sentencia, sino medida dispositiva.

Finalmente, argumentan que quien cumple con una medida dispositiva no está *recluido* a los fines del Art. 232 del Código Penal, *supra.* Aducen que una medida dispositiva *no* equivale a una sentencia de reclusión y que las instituciones especiales para menores no son equivalentes a instituciones carcelarias como lo requiere el delito de fuga. Aseveran que de aplicárseles el referido Art. 232, se violaría el principio de legalidad.

## III

Estos argumentos exigen un breve repaso de ciertos principios elementales en materia de hermenéutica penal. Todas las leyes, incluso las más claras, requieren de algún grado de interpretación. *Pueblo v. Sierra Rodríguez,* 137 D.P.R. 903 (1995). En cuanto a esa teoría, es fundamental recordar que al lenguaje de una ley debe dársele la interpretación que valide el propósito del legislador, conscientes siempre de sus consecuencias. *Pacheco v. Vargas, Alcaide,* 120 D.P.R. 404, 409 (1988). Por esta razón, "[t]enemos *el deber de hacer que el derecho sirva propósitos útiles y evitar una interpretación tan literal que lleve a resultados absurdos".* (Énfasis suplido.) Íd.

En el contexto de las leyes penales, el debido proceso de

ley exige, como condición para su validez, que los estatutos sean claros y precisos. *Pueblo v. Mantilla*, 71 D.P.R. 36 (1950). Conforme al principio de legalidad, los estatutos penales deben ser interpretados de forma restrictiva en cuanto a lo que desfavorece al acusado, y liberal en lo que le favorece. Art. 8 del Código Penal, 33 L.P.R.A. sec. 3031; *Pueblo v. Rodríguez Jiménez*, 128 D.P.R. 114 (1991).

Sin embargo, esto no quiere decir que a la letra de un estatuto deba dársele su significado más restrictivo, o hacer caso omiso a la evidente intención del legislador. *Pueblo v. Sierra Rodríguez*, supra; *Pacheco v. Vargas, Alcaide*, supra, pág. 410; *Pueblo v. Mantilla*, supra, pág. 44. No debemos perder de vista que la ley penal "[n]o es, [ni tampoco será nunca] un sistema completo y sin lagunas de modo que con el simple procedimiento lógico, basado en los preceptos legales escritos, se puedan resolver todas las cuestiones". (Escolio omitido.) *Pueblo v. Tribl. Superior*, 81 D.P.R. 763, 788 (1960).

Recordemos, también, que los estatutos penales siempre deben interpretarse a la luz de la realidad social de donde surgen y operan. La interpretación judicial debe evolucionar y adaptarse siempre a los cambios sociales y económicos del momento, para así mantener su eficacia ante las nuevas necesidades de la época. *Pueblo v. Batista Montañez*, 113 D.P.R. 307, 313 (1982).

El principio de legalidad *nullum crimen, nulla poena sine previae lege* tiene como consecuencia práctica que ninguna sentencia condenatoria podrá dictarse mediante la aplicación de una pena, por hechos que la ley previamente no hubiese declarado punibles. Art. 8 del Código Penal, *supra*; E. Bacigalupo, *Manual de derecho penal: parte general*, Bogotá, Ed. Temis, 1984, págs. 32–33. En *ausencia de ley* que así la caracterice, impide que los tribunales nos embarquemos en la tarea creadora de tratar de condenar cierta conducta socialmente censurable o, por analogía, determinar su ilegalidad.

El estatuto penal debe ser lo suficientemente ex-

plícito para notificar de antemano cuáles conductas serán susceptibles de ser castigadas. O sea, la ley no puede estar redactada de tal forma que un individuo de inteligencia común esté obligado a adivinar su significado o que pueda, razonablemente, diferir de su aplicación; ello violaría el debido proceso de ley. Art. II, Sec. 7 de la Constitución del E.L.A., L.P.R.A., Tomo 1; *Pueblo v. Hernández Colón*, 118 D.P.R. 891 (1987). *El propósito de la ley no es atrapar al incauto, sino prevenir a los ciudadanos de las conductas que ella prohíbe.*([8])

## IV

El Art. 232 del Código Penal, *supra*,([9]) vigente al momento de los hechos aquí relatados, disponía, en lo pertinente:

Toda persona *sometida legalmente* a detención preventiva, a reclusión o a medida de seguridad de internación, que se fugare será sancionada conforme a las siguientes penas. (Énfasis suplido.) 33 L.P.R.A. sec. 4428.

En *Rivera v. Delgado*, 82 D.P.R. 692, 695 (1961), en ocasión de interpretar su artículo antecesor 152,([10])

---

([8]) Véanse: *Whitney v. California*, 274 U.S. 357 (1927); *De Jonge v. Oregon*, 299 U.S. 353 (1937).

([9]) Dispone en su totalidad:

"Toda persona sometida legalmente a detención preventiva, a reclusión o a medida de seguridad de internación, que se fugare será sancionada conforme a las siguientes penas:

"a) Si estuviese en detención preventiva será sancionada con pena de reclusión que no excederá de seis meses.

"b) Si estuviere cumpliendo sentencia firme o en trámite de apelación por un delito menos grave, será sancionada con pena de reclusión que no excederá de seis meses.

"c) Si estuviere cumpliendo sentencia firme o en trámite de apelación por un delito grave, será sancionada con pena de reclusión por un término fijo de seis (6) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta mínimo de cuatro (4) años.

"Esta pena será en adición a la sentencia que se le impusiere por el otro delito o a la que estuviere cumpliendo, según fuere el caso, disponiéndose que no será concurrente con ninguna otra." (Énfasis suplido.) 33 L.P.R.A. sec. 4428.

([10]) Art. 152 del derogado Código Penal de 1937 (33 L.P.R.A. ant. sec. 509).

aclaramos que "[c]omete el delito de fuga la persona que se escapa de un sitio, como una cárcel, *donde se encuentra bajo custodia legal. La fuga de la custodia legal más bien que de un sitio de confinamiento es lo que constituye la esencia del delito*". (Énfasis suplido.) Véase *Pueblo v. Figueroa Garriga*, 140 D.P.R. 225 (1996).

Con razón se ha expresado que "[e]l objetivo jurídico de protección tutelar en este artículo [232] es el respeto que se merece el Estado cuando impone límites a la libertad de sus ciudadanos por razón de haber resultado convictos". D. Nevares-Muñiz, *Código Penal de Puerto Rico comentado*, 3ra ed. rev., San Juan, Inst. Desarrollo del Derecho, 1995, pág. 371. Véase *Pueblo v. Figueroa Garriga*, supra.

Un análisis del referido Art. 232 revela que el delito de fuga requiere dos (2) presupuestos: *primero*, que el imputado haya incurrido previamente en *conducta constitutiva de delito*, y *segundo*, que se encontrare bajo *custodia legal del Estado* al momento de fugarse.

Debemos, pues, ver inicialmente si el concepto "falta" cabe dentro de la definición genérica de delito de nuestro Código Penal. Luego examinaremos si imponer una "medida dispositiva de custodia" al amparo de la Ley de Menores de Puerto Rico significa que el menor se encuentra bajo la custodia legal del Estado.

Nuestra jurisprudencia no ha estado ajena a la cuestión. Así, en el pasado hemos caracterizado el procedimiento estatuido en la Ley de Menores de Puerto Rico como uno " 'especial donde *los delitos se denominan faltas*, el juicio se denomina vista adjudicativa y *la sentencia, medida dispositiva*". (Énfasis suplido.) *Pacheco v. Vargas, Alcaide*, supra, pág. 412. Véase D. Nevares-Muñiz, *Derecho de Menores*, Hato Rey, Inst. Desarrollo del Derecho, 1987, pág. 11.

A pesar de que no es de naturaleza criminal, sino sui géneris, ha adquirido matices de naturaleza punitiva que van más allá del propósito meramente rehabilitador y paternalista. *Pueblo en interés menor R.G.G.*, 123 D.P.R.

443, 446 (1989). La Ley de Menores de Puerto Rico[11] refleja un enfoque "ecléctico", pues tiene como fin la rehabilitación del menor, pero le impone un mayor grado de responsabilidad por sus actos. *Pueblo en interés menores A.L.R.G. y F.R.G.,* 132 D.P.R. 990 (1993); Exposición de Motivos de la Ley Núm. 88 (1986 Leyes de Puerto Rico 285).

■ Es un estatuto de carácter *procesal* que atiende la minoridad del ofensor para ofrecerle un tratamiento individualizado, que esté atemperado a sus necesidades especiales, con el fin de obtener su eventual rehabilitación. *La Ley de Menores de Puerto Rico no tipifica la conducta ilegal del menor; esa función recae únicamente en el Código Penal que, aplicado a los menores, denomina su conducta como "falta".* Al respecto, su Art. 3(i) define *falta* como la "infracción o tentativa de infracción por un menor de las leyes penales, especiales u ordenanzas municipales de Puerto Rico, excepto las infracciones o tentativas que por disposición expresa de este Capítulo estén excluidas". 34 L.P.R.A. sec. 2203(i).

■ En *Pacheco v. Vargas, Alcaide,* supra, págs. 411–413, establecimos que el concepto *delito*[12] del Código Penal consta de dos (2) elementos básicos, a saber, *conducta y sanción.* Allí resolvimos que *las faltas cumplen con ambos elementos, pues los menores incurren en conducta constitutiva de delito según es definida por las leyes penales y las medidas dispositivas constituyen las sanciones que se imponen al menor por haber violado esa ley penal.*

■ En cuanto al aspecto de la *custodia legal,* el Procurador General argumenta que las conductas aquí imputadas corresponden a la modalidad de una persona *sometida legalmente a reclusión,* según el Art. 232 del Código

---

[11] La Ley Núm. 97 de 23 de junio de 1955 (antigua Ley de Menores) fue sustituida por la Ley Núm. 88 de 9 de julio de 1986, actualmente vigente, *supra.*

[12] El Art. 9 del Código Penal, 33 L.P.R.A. sec. 3041, define *delito* como "un acto cometido u omitido en *violación de alguna ley que lo prohíbe u ordena,* aparejando, al ser probado, alguna pena o medida de seguridad". (Énfasis suplido.)

Penal, *supra*. Al analizar la definición de "pena de reclusión", notamos que el Art. 40 del Código Penal, 33 L.P.R.A. sec. 3202, la presenta como "la *privación de la libertad* en la *institución adecuada* durante el tiempo señalado en la *sentencia*". (Énfasis suplido.)

Esta definición establece tres (3) elementos básicos para determinar si una persona se encuentra en estado de reclusión: "privación de la libertad", en "institución adecuada", mediante una "sentencia" de reclusión previa.

La singularidad de la pena de reclusión es que conlleva la "restricción de la libertad física". Nevares-Muñiz, *Código Penal de Puerto Rico comentado, op. cit.*, pág. 67. Por otro lado, nuestro Código Penal dispone la reclusión de menores en una institución adecuada. El Art. 41 del Código Penal dispone:

> Las sentencias de reclusión contra menores de veintiún (21) años *deberán cumplirse en instituciones habilitadas para este tipo de delincuentes.* (Énfasis suplido.) 33 L.P.R.A. sec. 3203.

Al amparo de nuestro ordenamiento, cuando un tribunal determina que un menor ha incurrido en falta y representa un peligro para la sociedad y/o para sí mismo, ordenará que sea ingresado a una institución adecuada para su rehabilitación y cuido por el Estado. Bajo su nomenclatura, en esos casos, el Tribunal de Menores impone al ofensor *una medida dispositiva de custodia.* Art. 24 de la Ley de Menores de Puerto Rico, 34 L.P.R.A. sec. 2224.

En *R.A.M. v. Tribunal Superior*, 102 D.P.R. 270, 273 (1974), reconocimos que "[e]l menor está sujeto, al igual que el adulto, al estigma resultante de una determinación de que ha violado un estatuto criminal, y asimismo *está expuesto a la posibilidad de reclusión en una institución disciplinaria, que envuelve necesariamente la privación de su libertad*". (Escolio omitido y énfasis suplido.)

Evidentemente, un menor que cumple con una medida dispositiva de custodia tiene su libertad restringida; lo mismo que a un adulto al que se le ha impuesto

una pena de reclusión.[13] En ambos casos, el sujeto se encuentra físicamente confinado en contra de su voluntad. Estamos, pues, ante el primero de los elementos de la pena de reclusión: *la privación de libertad.*

Resulta también claro que no existe diferencia real entre la imposición de una medida dispositiva al menor y una sentencia. Ambas constituyen las sanciones máximas impuestas por un tribunal a un menor o a un adulto por haber violado una ley penal. *Pacheco v. Vargas, Alcaide,* supra.

Resolvemos que la medida de custodia, como método de restricción a la libertad, que fue impuesta a los menores Rodríguez Rivera *et al.,* equivale a la sentencia de reclusión por delito. Otra interpretación equivaldría a adjudicarle un significado contrario al término "reclusión" del Código Penal, y divorciaría el propósito de la Ley de Menores de Puerto Rico de sancionar al menor por conducta equivalente a delito.

En cuanto al término "institución", según utilizado en el Art. 40 del Código Penal, *supra*, la Legislatura *calificó* dicho término con el adjetivo "adecuada". De esta forma concedió al tribunal sentenciador discreción para que la reclusión pudiese ser cumplida en la institución que mejor atienda las necesidades y características del recluso, y la seguridad de la ciudadanía en general. Por ello, la pena de reclusión, como método de restricción de la libertad, no depende del lugar en que será internado el convicto. *Rivera v. Delgado*, supra, pág. 695.

Sin embargo, el delito de fuga no requiere necesariamente que el sujeto activo este internado físicamente

---

[13] En el informe sometido al Consejo para la Reforma de la Justicia en Puerto Rico, por la Comisión de Menores y Relaciones de Familia, se estableció al respecto que "la clasificación del proceso juvenil como uno civil no ... ha de privar al menor de los derechos inherentes de un proceso criminal ya que 'reclusión' es privación de la libertad, encarcelamiento en contra de la voluntad de la persona, ya se catalogue el proceso como uno de índole 'criminal' o 'civil' ". Citado en Informe, *supra*, pág. 17.

dentro de una institución carcelaria; lo determinante es que al momento de su evasión se encuentre bajo la custodia legal del Estado. *Rivera v. Delgado,* supra; Nevares-Muñiz, *Código Penal de Puerto Rico comentado, op. cit.,* pág. 371. De ahí que una persona esté bajo la custodia legal desde que sea arrestado. IV *Wharton's Criminal Law,* págs. 437–438 (14ta ed. 1981). También cometería fuga el recluso que, con pase temporal, no regresa a la institución donde estaba recluido, en la fecha correspondiente. En este caso, la evasión ocurre de la custodia constructiva del Estado sobre el sujeto.([14]) *Wharton's,* supra, págs. 431–432.

Resulta claro que los conceptos "falta" y "medida dispositiva de custodia" participan de los elementos constitutivos de delito y custodia legal, respectivamente, requeridos por el delito de fuga. Ineludible es concluir entonces que los acusados, Rodríguez Rivera *et al.,* se encontraban sometidos legalmente a reclusión al momento de evadirse de la institución juvenil donde se encontraban confinados.

## V

Rodríguez Rivera *et al.* nos plantean que la Ley de Menores de Puerto Rico fue enmendada por la Ley Núm. 183 de 12 de agosto de 1995 (34 L.P.R.A. secs. 2203, 2205–2206, 2222, 2224, 2229–2231), para incluir la falta de fuga en dicha ley.([15]) Argumentan que dicha enmienda

---

([14]) En *Pueblo v. Rodríguez Rojas,* 95 D.P.R. 141 (1967), resolvimos que el apelante cometió el delito de fuga al evadirse de un hospital donde había sido trasladado bajo la custodia de las autoridades del penal para recibir tratamiento médico. En *Pueblo v. Figueroa Garriga,* 140 D.P.R. 225, 233 esc. 7 (1996), la mayoría del Tribunal resolvió, a manera de ejemplo, que un individuo también se encuentra bajo custodia legal cuando "se evade mientras está siendo transportado de la institución penal en que extingue su sentencia a un tribunal, para el acto de juicio, o a un hospital, para recibir tratamiento, etc. En estas situaciones, el confinado al así actuar comete el delito de fuga por razón de encontrarse bajo 'custodia legal' al momento de evadirse".

([15]) El Art. 3(v) de la Ley de Menores de Puerto Rico definió "fuga" como:

"... [t]odo menor, que estando bajo la custodia de la Administración de Instituciones Juveniles, incurriera en la comisión de la falta de fuga podrá ser encontrado incurso en nueva falta. La medida dispositiva de esta nueva falta será consecutiva a la medida original. Entendiéndose por fuga la ausencia injustificada sin permiso de

demuestra que el legislador excluyó *implícitamente* a los menores de la comisión del delito de fuga del Art. 232 del Código Penal, *supra*. Compatible con lo anterior, aducen que al definir las faltas Clase III omitió el delito de fuga. 34 L.P.R.A. sec. 2203(i)–(l). *No tienen razón.*

La premisa se fundamenta en un argumento erróneo. Según explicáramos, el Art. 3(i) de la Ley de Menores de Puerto Rico, *supra*, define *falta* como "la infracción o tentativa de infracción por un menor de las leyes penales"; sin embargo, exceptúa las infracciones o tentativas *que por disposición expresa de dicha ley estén excluidas*. 34 L.P.R.A. sec. 2203(i). Sin lugar a dudas estamos ante una conducta susceptible de ser imputada a un menor, pues no ha sido excluida expresamente por la ley. "Ni en el ámbito jurídico ni en el físico estamos ante un delito que sólo pueden cometer los adultos." *Pueblo en interés menor S.G.S.*, 128 D.P.R. 169, 173 (1991).[16]

Lo expuesto desvanece el planteamiento sobre violación al principio de legalidad. El Código Penal tipifica y da aviso, tanto a menores como adultos, de las conductas prohibidas.

El principio de legalidad no requiere una enumeración exhaustiva de todos los elementos que configuren el delito; cierto grado de generalización es permisible. Lo determinante es que el ciudadano común pueda conocer lo que está prohibido y permitido. Bacigalupo, *op. cit.*, pág. 34.

Tampoco adolece de vaguedad el referido Art. 232. De su texto se desprende con toda claridad la conducta punible, a saber, *evadirse de la custodia legal del Estado*. No concebimos que un individuo que esté recluido en una institución juvenil por un tribunal, sujeto a unos reglamentos, rodeado de guardias y otras medidas físicas que restringen su liber-

---

la Institución o el abandono injustificado de cualquier programa al que fuere referido el menor." 34 L.P.R.A. sec. 2203(v), según enmendada.

[16] Independientemente de que el argumento no aplica a los casos de autos debido a que los aquí acusados, ya sea por su edad o por renuncia a su jurisdicción, serán juzgados como adultos.

tad, no estuviera prevenido de que evadirse o rehusarse a volver a ella constituía una violación a la ley penal.

*Se dictarán las sentencias correspondientes y se devolverán los casos al Tribunal de Primera Instancia para la continuación de los procedimientos.*

El Juez Asociado Señor Hernández Denton concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López emitió una opinión disidente. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Endosamos, plenamente, la posición a los efectos de que, *de ordinario*, "al lenguaje de una ley debe dársele la interpretación que valide el propósito del legislador, conscientes siempre de sus consecuencias" (opinión mayoritaria, pág. 696), ya que " '[t]enemos el deber de ... evitar una interpretación [de un estatuto] tan literal que lleve a resultados absurdos' " (énfasis suprimido) íd.; posición que siempre hemos sostenido y que, curiosamente, hoy asume la mayoría de los integrantes del Tribunal con el propósito de poder llegar al erróneo resultado al que llegan en el presente caso.

De hecho, esa fue la razón principal de nuestro reciente disenso en *Sist. Univ. Ana G. Méndez v. C.E.S. II,* 142 D.P.R. 558 (1997); caso en que la mayoría de los integrantes del Tribunal *erróneamente* entendió procedente *"ceñirse"* a la letra de la ley, olvidarse totalmente de la intención legislativa, llegando, en consecuencia, a un resultado absurdo en el referido caso.

*¿Por qué, entonces, nuestro disenso en el caso de autos?* La contestación resulta ser meridianamente sencilla: a diferencia del caso de *Sist. Univ. Ana G. Méndez v. C.E.S.,* ante, *en el presente caso se trata de la interpretación de un*

estatuto penal; situación en que el debido proceso de ley y el principio de legalidad exigen y nos obligan a actuar de manera totalmente diferente.

## I

Establece el Art. 8 del vigente Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3031, que:

No se instará acción penal contra persona alguna por un hecho *que no está expresamente definido por la ley como delito*, ni se impondrán penas ni medidas de seguridad que la ley no hubiere previamente establecido.
*No se podrán crear por analogía delitos*, penas ni medidas de seguridad. (Énfasis suplido.)

Por otro lado, establece el Art. 9 del referido Código Penal, 33 L.P.R.A. sec. 3041, que:

*Delito es un acto cometido y omitido en violación de alguna ley que lo prohíbe u ordena*, aparejando, al ser probado, alguna pena o medida de seguridad. (Énfasis suplido.)

Como podemos notar en estas dos (2) disposiciones legales —en especial, el transcrito Art. 8— queda consagrado el precepto o "principio de legalidad". Dicho principio garantiza a los ciudadanos de este país que únicamente podrán ser penalmente castigados por hechos que la ley, *de antemano*, ha definido o tipificado como delito y, además, que en caso de ser convictos por la comisión de un delito, únicamente podrán ser sancionados con las penas o medidas de seguridad previamente establecidas para los hechos delictivos por los cuales fueron convictos. Véase *Pueblo v. Figueroa Garriga*, 140 D.P.R. 225 (1996).

En otras palabras, los tribunales *no* poseen autoridad para considerar, como constitutivos de delito público, hechos *distintos* a los consignados, específicamente como tales, en la ley, *ni* para imponer sanciones no previstas en dichas leyes. Véase *Pueblo v. Ríos Nogueras*, 114 D.P.R. 256, 260 (1983). Por otro lado, y conforme correctamente se expresa en la opinión mayoritaria, hay que mantener pre-

sente que el "principio de legalidad" exige que los estatutos penales tienen que ser interpretados de manera liberal, en lo que favorecen al imputado de delito, y de forma restrictiva, en cuanto a lo que los mismos desfavorecen a éste. Véase *Pueblo v. Rodríguez Jiménez*, 128 D.P.R. 114 (1991).

## II

En lo pertinente, el Art. 232 del Código Penal, 33 L.P.R.A. sec. 4428, establecía, al momento de la alegada comisión de los hechos hoy ante nuestra consideración, que:

Toda persona sometida legalmente a detención preventiva, a reclusión o a medida de seguridad de intervención, que se fugue será sancionada conforme a las siguientes penas ....

Conforme, *incluso*, se acepta en la opinión mayoritaria emitida, el delito de fuga que establece el citado Art. 232 parte de *dos* (2) premisas ineludibles, a saber: que la persona que se acusa del delito de fuga hubiere sido, *previamente*, acusada o convicta de la comisión de un *delito público* y que éste, al momento de incurrir en la alegada fuga, se encuentre bajo custodia legal. *Debe quedar claro que el estatuto en controversia requiere ambos requisitos.*

Independientemente del hecho de que el procedimiento establecido por la Ley de Menores de Puerto Rico,[1] conforme se expresa en la Opinión mayoritaria, pág. 699-700, haya "adquirido matices de naturaleza punitiva que van más allá del propósito meramente rehabilitador y paternalista" que antes prevalecía, *lo cierto es que dicho procedimiento no es de naturaleza criminal y uno en que la conducta por la cual se intervino originalmente con los menores de edad, involucrados en el presente caso, no se tipifica como delito y sí como falta.*

De manera, pues, que por mandato de ley, o por definición, los menores de edad aquí en controversia *no* pueden

---

[1] Ley Núm. 88 de 9 de julio de 1986 (34 L.P.R.A. sec. 2201 *et seq.*).

ser acusados de infringir los disposiciones del antes citado Art. 232 del Código Penal, *supra*, por cuanto el mismo presupone, *repetimos*, que ellos *previamente* hubieren sido acusados, o convictos, de la comisión de un *delito* público, lo cual *no* es así.

Equiparar, *por analogía*, una "falta" a un delito público, como lo hace la mayoría de los integrantes del Tribunal, *constituye una crasa violación al principio de legalidad consagrado en los Arts. 8 y 9 del Código Penal*, 33 L.P.R.A. secs. 3041 y 3042; principio que es uno de los baluartes principales y fundamentales de nuestro ordenamiento jurídico. Lo erróneo de la posición que hoy asume la mayoría —de equiparar, repetimos, una falta a un delito— resulta patente cuando consideramos que, de la misma ser correcta, nada impediría que el Ministerio Fiscal alegue reincidencia, en la acusación por fuga, en relación con las faltas cometidas por los menores de edad en controversia.

Por último, no podemos enfatizar lo suficiente el hecho de que la mejor evidencia del erróneo proceder mayoritario es la acción de la Asamblea Legislativa de enmendar la Ley de Menores de Puerto Rico con el propósito de adicionar la falta de fuga al referido estatuto. Dicha acción constituye un reconocimiento implícito del legislador de que no existía, hasta el momento de la enmienda, disposición alguna en nuestro ordenamiento que sancionara esa conducta en el caso de los menores de edad.