El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
El Sistema de Justicia Juvenil tiene ciertas ventajas en comparación con el Sistema Criminal de adultos, que permite una mayor efectividad en la intervención con el individuo. El primero tiene todo un andamiaje creado por ley, encaminado a forta-lecer los procesos de seguimiento de las medidas condicionales (probato-rias) o desvío para el logro de la rehabilitación. (Énfasis suplido.(1)
El presente caso nos brinda la oportunidad de analizar por primera vez si el Reglamento de Métodos Alternos para la Solución de Conflictos de este Tribunal aplica en los ca-sos iniciados al amparo de la Ley de Menores de Puerto Rico (Ley de Menores), Ley Núm. 88 de 9 de julio de 1986 (34 L.P.R.A. see. 2201 et seq.).
I
El 2 de diciembre de 2008 se presentaron quejas en in-terés de los menores C.L.R. y A.V.L., quienes para esa fe-cha contaban con catorce y trece años de edad, respectivamente. La falta imputada a cada uno de los me-nores consistió en la infracción del Artículo 198 del Código Penal de Puerto Rico (robo). Particularmente, en las quejas se alegaba que los menores C.L.R. y A.V.L., actuando en común acuerdo y mediando fuerza e intimidación, le arre-bataron un bulto a la también menor de edad D.M.H., de donde sacaron su cartera y se apropiaron de siete dólares, sustrayéndolos en su presencia y en contra de su voluntad. Esto, luego que, alegadamente, le pidieran cincuenta centavos para comprar cigarrillos y ésta no se los dio, ya que el *321 dinero era producto de una venta de chocolates de la clase de economía doméstica.
Durante la celebración de la vista de causa probable para presentar las querellas —celebrada el 16 de diciem-bre de 2008— los abogados de defensa de los menores soli-citaron al Tribunal de Primera Instancia que el caso fuera referido a un proceso de mediación. El Procurador de Me-nores se opuso a dicha solicitud y argumentó que la falta imputada a los menores (robo) no cualificaba para un pro-ceso de mediación, ya que ésta corresponde a un delito de naturaleza grave.
Luego de considerar los argumentos de ambas partes, el Tribunal de Primera Instancia emitió una resolución me-diante la cual ordenó a las partes comparecer ante la Ofi-cina de Mediación de Mayagüez. En su resolución, el foro primario expresó que había efectuado su determinación luego de consultar con la Oficina de Mediación, examinar la posición de los padres de los menores y al considerar que era el primer proceso ante el Tribunal de Menores al cual se exponían ambos menores. A su vez, dicho foro citó en apoyo a su determinación la Regla 7.04 del Reglamento de Métodos Alternos para la Solución de Conflictos (Regla-mento), y expresó que su decisión respondía al interés de los menores y de la justicia. Como resultado de lo anterior, el foro primario ordenó a las partes acudir a mediación el 8 de abril de 2009.
Inconforme, el Procurador de Menores presentó una oportuna moción de reconsideración. Alegó que la falta im-putada a los menores era de naturaleza grave, clasificada Clase III por la Ley de Menores, la cual ni tan siquiera cualificaba para un programa de desvío o medida disposi-tiva nominal. Por lo tanto, sostuvo que referir el caso al proceso de mediación no cumpliría con el propósito del Re-glamento de Métodos Alternos para la Solución de Conflic-tos ni con el fin de la Ley de Menores de proveer trata-miento y supervisión al menor a través de una medida de *322 libertad condicional o custodia. El Tribunal de Primera Instancia, denegó la moción de reconsideración.
Así, pues, la Procuradora General de Puerto Rico (Pro-curadora General) presentó un Recurso de Certiorari ante el Tribunal de Apelaciones. Dicho foro apelativo revocó la determinación del Tribunal de Primera Instancia. Con-cluyó que según las disposiciones de la Ley de Menores, como la falta imputada a los menores C.L.R. y A.V.L. fue Clase III, éstos no podrían ser referidos a un procedimiento de desvío. Por consiguiente, el Tribunal de Apelaciones de-volvió el caso al foro de instancia para que continuaran los procedimientos.
Inconformes con este resultado, C.L.R. y A.V.L. presenta-ron oportunamente recursos de certiorari ante este Tribunal para que revocáramos la sentencia del Tribunal de Apelaciones. Además, solicitaron la paralización de los pro-cedimientos a nivel de instancia mediante sus respectivas mociones de auxilio de jurisdicción. El 21 de abril de 2009 emitimos dos resoluciones mediante las cuales denegamos la expedición de cada uno de los recursos. Sin embargo, ante una oportuna moción de reconsideración presentada por el menor C.L.R., el 8 de mayo de 2009 ordenamos la paraliza-ción de los procedimientos y concedimos a la Procuradora General un término de quince días para que mostrara causa por la cual no debíamos expedir el auto y revocar la deter-minación del Tribunal de Apelaciones. El 11 de mayo de 2009 adoptamos el mismo curso de acción en relación con la moción de reconsideración presentada por el menor A.V.L. Además, ordenamos la consolidación de los casos.
El 26 de mayo de 2009, la Procuradora General compa-reció mediante su escrito en cumplimiento de nuestra or-den de mostrar causa. Posteriormente, el 29 de mayo de 2009, autorizamos la intervención de los profesores Carlos Del Valle Cruz y Francis Daniel Nina Estrella como amigos de la corte. Así, pues, habiendo éstos comparecido me-diante un escrito, concedimos un término a la Procuradora *323 General, según solicitado, para expresar su posición en re-lación con el mismo.
Contando con la comparecencia de las partes, según ex-puesta en sus respectivos escritos, estamos en posición de resolver.
II
A. Naturaleza y objetivos de la Ley de Menores
 La Ley de Menores reglamenta los procedi-mientos investigativos, judiciales y ejecutivos en los casos de menores que incurren en conducta constitutiva de de-lito, según tipificada en el Código Penal o en las leyes especiales. Como toda ley especial, “[s]us disposiciones aplicarán con preferencia a otras leyes, y en caso de con-flicto, prevalecerán los principios especiales” que ésta enmarca.(2) Esta ley derogó la anterior Ley de Menores de 1955, e introdujo un cambio en el enfoque filosófico: de uno penal a uno de fines duales; esto es, rehabilitación y pro-tección de la sociedad y, a la vez que garantiza derechos a los menores, les exige responsabilidad penal por sus actos delictivos.(3)
La filosofía, así como los propósitos de la actual Ley de Menores, se explican en detalle en su Exposición de Moti-vos:
[E]sta ley adopta como marco filosófico del Sistema de Jus-ticia Juvenil el humanismo dentro de un enfoque ecléctico de acción e intervención, donde se compatibilicen la propuesta rehabilitadora y el poder y responsabilidad posible inherente al Estado de brindarle toda oportunidad rehabilitativa, así como exigirle al menor un quantum de responsabilidad para dirigir sus actos y responder por éstos. (Enfasis nuestro.) 1986 Leyes de Puerto Rico 284, 285.
*324 Además, al final de esta Exposición de Motivos, supra, pág. 286, se señala lo siguiente:
Toda ayuda al menor, que propenda a su rehabilitación, debe concientizarlo de la importancia del acto cometido llevándolo a percatarse de éste, sus implicaciones, la responsabilidad individual y comunitaria envuelta, donde se propicie a su vez res-peto a la ley existente. El tratamiento habilitador o rehabilita-dor que se le preste debe cristalizar mediante objetivos y actividades tangibles que han de ser alcanzados por el esfuerzo genuino de las autoridades que tienen a cargo su diseño y ejecución. (Énfasis nuestro.)
El Artículo 2 de la Ley de Menores, supra, 34 L.P.R.A. see. 2202, expone los tres propósitos que ésta persigue. Establece que estos “deben orientar en el análisis e interpretación de la misma, por cuanto constituyen la ex-presión auténtica del legislador de los objetivos de la ley”.(4) Entre estos propósitos se encuentra “[p]roteger el interés público tratando a los menores como personas necesitadas de supervisión, cuidado y tratamiento, a la vez que se les exige responsabilidad por sus actos”. (Enfasis suplido.(5) Con relación a este propósito, la doctora Nevares-Muñiz nos comenta que el objetivo es “protege [r] el interés de la comunidad al reconocer que al menor delincuente debe proveérsele supervisión y tratamiento, pero también exigirle responsabilidad por sus actos si éstos infringen las leyes penales”.(6)
Los procedimientos de menores han adquirido “matices de naturaleza punitiva que van más allá del enfoque meramente rehabilitador y paternalista de la [ley de 1955]”.(7) La Ley de Menores actual adoptó “un enfoque ecléctico de acción e intervención en el cual se armoniza la *325 responsabilidad de parens patriae del Estado, en cuanto a la rehabilitación de los ofensores, con el deber de éstos de responder por sus actos”. (Énfasis suplido.(8) Además, “[e]l castigo es de transcendental importancia en nuestro Sis-tema de Justicia Juvenil. La [L]ey de [M\enores de Puerto Rico, parece reconocer que sin castigo no puede haber un proceso de rehabilitación efectivo”. (Énfasis suplido.(9) Por castigo nos referimos a ese quantum de responsabilidad que la Ley de Menores impone a cada menor.
La evasión de responsabilidad de los ofensores juveniles so-bre su vida, sus actos, y las personas con quienes conviven ha sido en muchos casos la razón para haber incurrido en con-ducta delictiva o antisocial. Por eso la firmeza con que se im-pone el castigo es de suma trascendencia, pues éste tiene que percibir en el sistema autoridad y constancia en sus determinaciones. La falta de firmeza del juez, el trabajador social o el encargado de la supervisión del castigo, sería detrimental en su proceso de rehabilitación. (Énfasis suplido.(10)
Por otra parte, y aunque hemos sido consistentes en señalar los “matices de naturaleza punitiva” y no “paternalista” de la actual Ley de Menores, también hemos sido consistentes al puntualizar que los procedimientos al amparo de esta ley no son de naturaleza criminal(11) De hecho, y de acuerdo con los propósitos de esta ley, su propio Artículo 37(a) especifica que “[l]os procedimientos y las órdenes o resoluciones del juez bajo este capítulo no se considerarán de naturaleza criminal ...”. (Énfasis suplido.(12)
*326 La naturaleza del proceso en asuntos de menores es distinta a la naturaleza del proceso en la esfera penal, aunque sus procedimientos sean parecidos. La naturaleza del proceso penal es punitiva; esto es, va dirigida principalmente a que el convicto pague su deuda con la sociedad. La doctora Nevares-Muñiz define el derecho procesal penal como “aquella área del derecho público constituida por el conjunto de disposiciones estatutarias y decisiones jurisprudenciales, cuyo propósito es regular el proceso mediante el cual el Estado identifica, enjuicia y penaliza a la persona que ha cometido un delito”(13) Con relación a esto, la doctora Ortega Vélez señala, de igual forma, que el derecho penal “[s]e caracteriza por prever las sanciones como forma de evitar los comportamientos que el Derecho juzga especialmente peligrosos —delitos—. Así, el ordenamiento reacciona ante la violación generando un mal al infractor como pago por su comportamiento ilícito”. (Énfasis suplido. )(14)
En cambio, y como ya señalamos, la naturaleza del proceso en los asuntos de menores está dirigida, en primer lugar, a la rehabilitación, tratando a los menores “como personas necesitadas de supervisión, cuidado y tratamiento”, a la vez que se les exige “un quantum [una porción] de responsabilidad para dirigir sus actos y responder por éstos”(15) En los procesos de asuntos de menores nos encontramos ante “un procedimiento especial donde los delitos se denominan faltas, el juicio se denomina vista adjudicativa y la sentencia medida dispositiva”(16) Un pro- *327 ceso especial en el cual el menor transgresor (el término “transgresor” sustituye al término “convicto” de la esfera penal),(17) tiene derecho a recibir tratamiento individuali-zado que propenda a sus necesidades y eventual rehabilitación.(18) Un proceso especial en donde el menor no puede ser detenido, transportado o recluido en institucio-nes para adultos.(19) Un proceso especial en el cual todos los asuntos son confidenciales, por lo que el público en general no tiene acceso, a menos que los padres, encargados o el representante legal del menor consientan que el asunto se ventile públicamente.(20) Un proceso especial en el que no se admite la renuncia de un menor a cualquiera de los derechos constitucionales que lo cobijan, si no están pre-sentes sus padres o encargados.(21)
Además, la Ley de Menores dispone que “[e] 1 historial del menor ante el tribunal no constituirá impedimento para cualquier solicitud y obtención de empleo, *328 puesto o cargo en el servicio público”.(22) Incluso, el certifi-cado de antecedentes penales que emite la policía no pro-vee información respecto a faltas cometidas por un menor. Por ser un proceso especial y distinto al penal, cualquier referencia a una sentencia impuesta a un menor por la comisión de una falta es nula y debe eliminarse del expe-diente penal. (23) Tampoco puede presentarse contra un me-nor en un tribunal de jurisdicción ordinaria —en otro pro-cedimiento civil o penal— la evidencia presentada contra ese menor en una vista adjudicativa ante el Tribunal de Menores. (24)
Por ser un proceso diferente al penal, la Ley de Menores requiere que todo expediente de un menor en poder de la policía tiene que ser destruido al cumplir éste los dieciocho años de edad, ni podrán considerarse las faltas que haya cometido para imputarle como adulto una sentencia en grado de reincidencia. (25) Ni siquiera los expedientes judiciales pueden archivarse juntos, pues el artículo 37(d) de la Ley de Menores señala que “[l]os expedientes en los casos de menores se mantendrán en archivos separados de los de adultos”, y serán confidenciales. (26)
Por último, pero extremadamente pertinente a la controversia que nos ocupa, el Artículo 38 de la Ley de Menores(27) establece que las disposiciones de esa ley se regirán, no por las Reglas de Procedimiento Criminal —que pertenecen y fueron redactadas para el proceso penal— sino por las Reglas de Procedimiento para Asuntos de Menores (Reglas). Estas reglas fueron redactadas específi- *329 camente para este proceso, adoptadas por este Tribunal y aprobadas por la Legislatura.(28) En armonía con lo anterior, éstas establecen que
... regirán todos los procedimientos que se inicien a partir de la vigencia de la Ley Núm. 88 de 9 de julio de 1986, deno-minada “Ley de Menores de Puerto Rico”, incluyendo aquellas que estén pendientes a la fecha de vigencia de estas reglas siempre que su aplicación no perjudique derechos sustantivos. Se interpretarán de acuerdo a los propósitos que inspira la Ley de Menores, sees. 2201 et seq. de este título, y de modo que garanticen una solución justa, rápida y económica de to-dos los asuntos.(29)
De todo lo anterior podemos colegir, en primer lugar, que nuestra Ley de Menores está predicada en una filosofía que exige responsabilidad al menor por la falta cometida, mientras expresamente distingue el proceso de uno principalmente punitivo. En segundo lugar, es evidente que la naturaleza del proceso para menores es distinta a la del proceso penal. Como en otras ocasiones he-mos expresado, los procedimientos de menores gozan de una naturaleza sui generis, por lo que no constituyen propiamente causas criminales.(30)
Es por eso que un adulto en un proceso penal puede recibir una condena que lo mantenga en prisión práctica-mente el resto de su vida, mientras que un menor en un proceso de menores sólo extinguirá su medida dispositiva (“su sentencia”), como mucho, hasta los veintiún años.(31) Tal diferencia es producto de la filosofía o la naturaleza que entraña cada proceso: el adulto, hablando filosófica-mente, tiene que pagar su deuda con la sociedad —proceso *330 penal — (32) mientras que al menor se le provee la oportuni-dad de rehabilitarse y “comenzar de nuevo” al cumplir su mayoría de edad. De hecho, la medida dispositiva de un joven incurso puede cesar (“extinguió su sentencia”) en el momento cuando se pruebe su rehabilitación, sin importar la gravedad de la falta (“el delito”) que hubiese cometido ni el tiempo que le restara por cumplir (33) Esa alternativa no está disponible para un adulto.
De igual forma, la figura de la víctima se trata de ma-nera distinta en ambos procesos. En el proceso penal la víctima puede ser resarcida a costa de un sobreseimiento total de los cargos en contra de la persona acusada.(34) En cambio, en el proceso contra un menor, tal resarcimiento de la víctima no podría darse a expensas de que el menor se le prive de recibir supervisión, cuidado y tratamiento —por las autoridades que tienen a cargo su diseño y ejecución— pues tal privación iría en contra de los propósitos expresos de la Ley de Menores.(35)
III
A. Naturaleza y propósito del proceso de mediación en Puerto Rico
La doctora Mildred E. Negrón Martínez expresa que, “[h]istóricamente, las sociedades han ensayado y utilizado diferentes medios para atender los conflictos, bien para re-solverlos, evitarlos o reprimirlos”.(36) Por consiguiente,
*331 [e]l interés que la mediación y otros métodos de resolución de conflictos han despertado durante los últimos años en los países occidentales, particularmente en aquéllos del conti-nente americano, tiene su origen en diversos factores. ... La efervescencia política de las décadas de 1960 y 1970 en Esta-dos Unidos ... sirvió de marco social a un sinnúmero de con-flictos sociales ... que propiciaron un replanteamiento sobre las formas de enfrentar y resolver conflictos. Asimismo, las críticas crecientes a los sistemas judiciales destacaban la in-accesibilidad de los tribunales para varios sectores de la po-blación civil ....(37)
Es en este contexto que surge la opción de los métodos alternos de resolución de conflictos como una alternativa a la formalidad, el costo y la lentitud de los procedimientos legales tradicionales.
En Puerto Rico, desde la década de 1970, la Rama Judicial ha implantado diversos mecanismos para remediar algunas dificultades relacionadas con el volumen y la ad-ministración de casos.(38) En 1980, el Secretariado de la Conferencia Judicial y Notarial propuso implantar alter-nativas adicionales al sistema adversativo puertorriqueño, entre las cuales incluyó la creación de programas adscritos al sistema judicial y regulados por el Tribunal Supremo que permitieran la solución de conflictos entre ciudadanos, entre los cuales se encontraba la mediación.(39) Esta suge-rencia se fundamentó en los hallazgos de una investigación que realizó el Secretariado de la Conferencia Judicial, que mostraba una tendencia de aumento en la litigación de ca-sos, a la vez que un atraso en el manejo de algunos casos en los tribunales.(40) De manera que la idea de incorporar a nuestro ordenamiento los métodos alternos para solucio-nar conflictos está estrechamente ligada al problema de la *332 congestión de calendario de los tribunales de primera ins-tancia y, como consecuencia de esto, la intención o el em-peño de aligerar la resolución de los casos pendientes ante dichos foros.(41)
B. Génesis y objetivos de la Ley Núm. 19 de 22 de septiem-bre de 1983
Como secuela de la necesidad de aligerar la solución de casos en nuestros tribunales, en 1980 el Secretariado de la Conferencia Judicial recomendó la aprobación de legislación que estableciera ciertas bases conceptuales y asignara fondos a la Rama Judicial para implantar métodos alternos para solucionar disputas. Así, en 1983, la Legislatura aprueba la Ley Núm. 19 de 22 de septiembre.(42) Con la aprobación de esta ley, la Asamblea Legislativa reconoció la importancia y utilidad que los métodos alternos de solución de conflictos representan para los esfuerzos por reducir la carga de trabajo de los distintos componentes del sistema de justicia puertorriqueño y convalidó las iniciativas de la Rama Judicial en esa dirección.(43) La Asamblea Legislativa, además, instruyó a este Tribunal a adoptar las reglas necesarias para establecer los programas que servirían como centros informales de resolución de disputas.(44)
Ahora bien, con relación a la naturaleza de los casos que podrían ser referidos a los centros cuya creación se autorizaba, el Artículo 4 de la Ley Núm. 19, supra, es meridianamente claro:
Los centros o programas que se establezcan ... proveerán para la pronta resolución de determinados asuntos de natura- *333 leza civil o criminal de manera informal, sencilla y sin la au-torización utilización de procedimientos adversativos.(45)
En cumplimiento con el mandato promulgado por la Ley Núm. 19, supra, este Tribunal aprobó el Reglamento.(46) Este Reglamento declara lo siguiente como política pública de la Rama Judicial: “fomentar la utilización de mecanismos complementarios al sistema adjudicativo tradicional con el fin de impartir justicia en una forma más eficiente, rápida y económica.”(47)
En el contexto de lo que nos es pertinente, el Reglamento define la mediación como un “proceso de intervención, no adjudicativo, en el cual un [interventor neutral] ayuda a las personas en conflicto a lograr un acuerdo que les resulte mutuamente aceptable”.(48) Además, la Regla 7.01(b) añade que “[l]a mediación tiene como propósito promover la participación de las personas en la solución de sus conflictos y que las partes involucradas asuman responsabilidad en el cumplimiento de los acuerdos”.(49)
Por último, la Regla 7.02(a) del Reglamento(50) establece cuáles casos son elegibles para este mecanismo alterno: “[s]erán elegibles para mediación los casos civiles y los casos criminales de naturaleza menos grave que puedan transigirse de acuerdo con [Zas Reglas de Procedimiento Criminal}”.
*334 En conclusión, la naturaleza de la Ley Núm. 19, supra, así como del Reglamento de Métodos Alternos para la Solución de Conflictos de este Tribunal encierran cuatro objetivos; a saber: impartir justicia en una forma más eficiente, rápida y económica. (51) Impartir una justicia más eficiente, rápida y económica, siendo estos tres últimos los objetivos a destacarse —hablando contextualmente— porque impartir justicia debe ser el objetivo o propósito general de cualquier organismo adscrito a la Rama Judicial.
De manera que lo que se busca es que, de una manera informal, se resuelvan aquellos asuntos que, por su natu-raleza, puedan obviar el proceso ordinario o tradicional de los tribunales, consiguiendo una justicia más rápida y me-nos costosa, a la vez que se ayuda a descongestionar los calendarios de nuestras salas de instancia.
IV
¿Puede referirse a mediación un caso que se encuentra sometido ante la consideración de un Tribunal de Menores? Antes de discutir la contestación a esa pregunta, debemos señalar que existen varias jurisdicciones en Estados Uni-dos en las que los procesos de mediación han probado ser útiles en casos de delincuencia juvenil, particularmente en aquellos primeros ofensores.(52)
La mediación que se utiliza en los casos de delincuencia juvenil en estos estados, como en otros países, es aquella que forma parte de los programas basados en la llamada justicia restaurativa.(53) Dicha justicia restaurativa ha sido *335 definida como un “proceso por el cual todas las partes que tienen un interés en una determinada ofensa se juntan para resolverla colectivamente y para tratar sus implica-ciones de futuro”.(54)
Según esta teoría, tanto las víctimas como los ofensores asumen una función activa en la resolución del conflicto y en la negociación de un acuerdo que pretende restablecer las pérdidas materiales y psicológicas de la víctima, mien-tras que inculca en el ofensor el “impacto humano” de su conducta criminal.(55) Por su parte, la responsabilidad del ofensor reside en aceptar la responsabilidad por sus accio-nes y en el papel activo que debe jugar en el proceso de restitución.(56) A base de esta teoría se han creado diversos programas, entre los que podemos mencionar la mediación víctima-ofensor y las juntas comunitarias o familiares, en-tre otros.(57)
Fundamentados en la teoría de la justicia restaurativa, los programas de mediación víctima-ofensor en casos de menores se centran en la experiencia de la víctima, la ne-cesidad de los ofensores juveniles de rendir cuentas y la importancia de proporcionar a las partes la oportunidad de participar activamente en el proceso sancionador.(58) Ade-más, se debe tener en cuenta que entre los propósitos fun-damentales de este tipo de programas se encuentra el po-der restaurar a la víctima.(59) En diversas jurisdicciones estadounidenses se ha utilizado la mediación víctima-ofensor en los casos de menores, e incluso existen unas *336 normas generales que pueden ser utilizadas como guías en la ejecución de estos programas.(60)
Ahora bien, en las jurisdicciones en las cuales se utiliza este tipo de mediación, los tribunales tienen total discre-ción para exigir cierto nivel de capacidad, conocimientos y características personales a los mediadores en sus progra-mas de mediación.(61) Por tal razón, se ha señalado que en los casos de mediadores víctima-ofensor en los procesos de menores, los requisitos deben reflejar los retos inherentes que envuelve la mediación con menores of ensores.(62)
De manera que, tanto los defensores como los detracto-res de la mediación víctima-ofensor hacen hincapié en la importancia de la formación adecuada y la creación de nor-mas guías (standards) para los mediadores.(63) Esto parece ser aún más importante en el tratamiento de niños y adolescentes.(64) Los profesionales de la mediación requie-ren un mayor nivel de habilidad para utilizarla correcta-mente, ante la necesidad de incurrir en un trauma adicio-nal mínimo, cuando se interviene en casos de mala conducta de menores, (65)
Por tal razón, recientemente se han llevado a cabo es-fuerzos particulares por parte de varios estados de Estados Unidos, así como por la Conferencia Nacional de Comisio-nados sobre Leyes Estatales Uniformes (National Confe *337 rence of Commissioners on Uniform State Laws), para es-tablecer una certificación y normas para los mediadores.(66) Además, es evidente que este tipo de mediación está pal-mariamente definida en las jurisdicciones en las cuales se utiliza, incluso existen algunas en las cuales la legislación estatal claramente promueve el proceso.(67)
Por todo lo anterior, debemos concluir que la mediación utilizada en los procesos de menores en otras jurisdicciones estatales se basa principalmente en la justicia restaurativa y que se ha diseñado específicamente para atender menores. Por consiguiente, entendemos que este proceso de mediación debe diseñarse en el contexto de los procesos de menores y en concordancia con los objetivos de la Ley de Menores.
En Puerto Rico, el Negociado de Métodos Alter-nos para la Solución de Conflictos —adscrito a la Oficina del Juez Presidente (Negociado)— administra el Centro de Mediación de Conflictos del Tribunal General de Justicia (Centro). El Centro, a través del Negociado y en cumplimiento con el Reglamento, le provee una certificación a toda aquella persona que interesa que su nombre se incluya en un registro de mediadores que pueden prestar sus servicios a la Rama Judicial.(68) En realidad, en Puerto Rico no se requiere una certificación como mediador, por lo que una persona puede ofrecer sus servicios como mediador sin estar certificado. Ahora bien, al igual que algunos Estados de Estados Unidos, en Puerto Rico la certificación de mediador que otorga el Negociado es una condición obli- *338 gada para que su nombre aparezca en la lista o en el regis-tro de mediadores capacitados para dar servicio a la Rama Judicial.
No obstante, la capacitación que provee el propio Negociado para otorgar su certificación, no incluye un adiestramiento diseñado específicamente para atender menores primero ofensores en asuntos de delincuencia juvenil, y mucho menos en el contexto de los procesos de las salas de menores y en concordancia con los objetivos de la Ley de Menores. De hecho, el único adiestramiento en un área especializada que se requiere como parte de los reqúisitos para completar la certificación de mediador es el completar ocho unidades de adiestramiento sobre manejo en casos de violencia doméstica. (69)
V

Incompatibilidad de la mediación actual con la Ley de Me-nores

Como ya hemos resuelto, los procedimientos al amparo de nuestra Ley de Menores no son de naturaleza criminal.(70) Asimismo, y como señalamos, tanto el texto de la Ley Núm. 19, supra, como el Reglamento de métodos alternos para la solución de conflictos, enmarcan los refe-ridos que pueden hacerse a mediación dentro del contexto de un proceso “criminal”.(71) De manera que, por el propio lenguaje de la Ley Núm. 19, así como de la Ley de Meno-res, es forzoso concluir que la mediación no fue incluida por *339 el legislador en los procesos para asuntos de menores.(72) De igual manera, nuestro reglamento de métodos alternos no incluye en su lenguaje expresión alguna que autorice la mediación en asuntos de menores.
Por todo lo antes discutido, y según la normativa jurisprudencial, es claro que la naturaleza y los propósitos de la Ley de Menores no se ajustan a la naturaleza y a los propósitos del mecanismo de mediación como está hoy constituido. Al concluir lo anterior no estamos interpretando restrictivamente nuestro Reglamento de Métodos Alternos, negándole de esa forma —y según se alega— derechos a los menores que les reconocemos a los adultos. Más bien, lo que hacemos es reconocer la clara intención y objetivos de la Ley Núm. 19 que autoriza dicho reglamento, y siendo consistentes con la normativa jurisprudencial esbozada hasta ahora por este Tribunal en materia de asuntos de menores. Además, ¿qué sentido tendría interpretar de manera liberal un reglamento para reconocer un alegado derecho que en realidad peijudica a quien lo recibe?
Por otro lado, el Reglamento de Métodos Alternos para la Solución de Conflictos establece como parámetro para aplicar el mecanismo de mediación en los casos criminales los delitos que se describen en las Reglas de Procedimiento Criminal. Tales delitos figuran específicamente en la Regla 246 de ese cuerpo de reglas, 34 LP.R.A. Ap. II. Sin embargo, como ya se ha señalado, los procedimientos de menores se guían, no por las Reglas de Procedimiento Criminal, sino por las Reglas de Procedimiento *340 para Asuntos de Menores. (73) En Pueblo en interés menor R.G.G., 123 D.P.R. 443, 463 (1989), señalamos que
... de una lectura de la totalidad de las Reglas para Asuntos de Menores se desprende que dichas reglas siguen fundamen-talmente las disposiciones de las Reglas de Procedimiento Criminal que regulan, en esta jurisdicción, los procedimientos cri-minales contra los adultos.
Ahora bien, nótese que aunque en la preparación de las Reglas de Procedimiento para Asuntos de Menores se siguieron fundamentalmente las disposiciones de las Reglas de Procedimiento Criminal, en las primeras no se incluyó una regla de “transacción de faltas” que fuera análoga a la “transacción de delitos” que constituye la Regla 246 de Procedimiento Criminal, supra. Así que, distinto al proceso penal —de adultos— en las Reglas de Procedimientos para Asuntos de Menores no existe una regla que permita la transacción de una falta.(74) Concluimos entonces que, mientras el legislador ha sido muy claro al dejar plasmada su intención con relación a la posibilidad .de transacción para los casos en el proceso penal, su silencio ha sido más que elocuente con relación a tal alternativa para con los procesos de menores.
Por último, y como señalamos, actualmente nuestro Cen-tro de Mediación de Conflictos no cuenta, como sí ocurre en otras jurisdicciones, con un programa de capacitación que le permita al Negociado certificar mediadores específica-mente en el área de menores primeros ofensores en asuntos de delincuencia juvenil, y mucho menos en el contexto de los procesos de las salas de menores.
Así, pues, acceder en el caso de autos a la solicitud de los peticionarios, permitiría que los padres o encargados legales de los dos menores imputados sean los que, junto a *341 la víctima, negocien una salida “eficiente, rápida y econó-mica” del caso que éstos enfrentan. Permitir que esta nego-ciación se lleve a cabo sin la supervisión de un mediador preparado para esto y sin unas normas guías (“standards”) que provean para la supervisión, cuidado y tratamiento que deben acontecer como parte del “quantum” de responsabili-dad que según la ley estos menores deben enfrentar, sería, sin duda, hacerles un daño.
Entendemos que la mediación puede llegar a ser —como ha ocurrido en otras jurisdicciones— un instrumento de gran beneficio en área de asuntos de menores en Puerto Rico. Como se sabe, es política pública de la Rama Judicial fomentar la utilización de mecanismos complementarios al sistema adjudicativo tradicional, como son los métodos al-ternos para la solución de conflictos(75)
Sin embargo, es ampliamente reconocido que los niños y los adolescentes son física, intelectual y emocionalmente diferentes a los adultos(76) Así, pues, estas diferencias re-dundan en conductas, análisis, juicios valorativos y reac-ciones disímiles en contraste con los adultos. Por tal razón, se ha expresado:
Although these deficits do not make adolescents any less dangerous, experts have argued that they require a specifically defined manner of adjudication and scope of punishment. (En-fasis suplido.(77)
Por consiguiente, si basado presumiblemente en estas diferencias el legislador diseñó un sistema de justicia especial para menores, ¿cómo hemos de exponerlos a un pro-ceso de mediación que ha sido diseñado específicamente para adultos?
Como señala la compañera juez, Hon. Laureana Pérez Pérez, “[e]l joven, a diferencia del adulto está en un proceso *342 de formación y admite cambios radicales en su vida. Así también, existe en él una actitud de combatir las adversi-dades y reencaminarse en una dirección que le ofrezca mayor felicidad”.(78) Por eso entendemos necesario, en el ejer-cicio de nuestro poder de parens patrie, vigilar que en tal proceso formativo no se introduzcan elementos o mecanis-mos no preparados o diseñados para ellos, que pudieran deformarlos en lugar de ayudarlos a reencaminarse en la dirección correcta.
VI
Por todo lo anterior, determinamos que según el texto de los estatutos considerados y la naturaleza o filosofía que encierran, el mecanismo de mediación, como se encuentra configurado al presente, está disponible únicamente para procesos civiles y criminales y no así para asuntos de menores.
Por ende, confirmamos la sentencia del Tribunal de Ape-laciones y devolvemos el caso al Tribunal de Primera Ins-tancia para la continuación de los procedimientos.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente, a la cual se une el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.
— O —

 L. Pérez Pérez, Protegiéndolos de la droga y la delincuencia, San Juan, Ed. Situm, 2009, pág. 7.

 Véanse: Art. 1 de la Ley de Menores de Puerto Rico, 34 L.P.R.A. see. 2201; Arts. 11 y 12(a) del Código Penal de Puerto Rico, 33 L.P.R.A. sees. 4639 y 4640(a).

 D. Nevares-Muñiz, Derecho de Menores, 6ta ed., Hato Rey, Inst. Desarrollo del Derecho, 2009, pág. 4.

 Nevares-Muñiz, op. cit., pág. 5.

 Art. 2 de la Ley de Menores, supra, 34 L.P.R.A. see. 2202.

 Nevares-Muñiz, op. cit., pág. 6.

 Pueblo en interés menores A.L.R.G. y F.R.G., 132 D.P.R. 990, 997 (1993). Véanse: Pueblo v. Ríos Dávila, 143 D.P.R. 687, 699 (1997); Pueblo en interés menor G.R.S., 149 D.P.R. 1, 12 (1999).

 Pueblo en interés menor G.R.S., supra, pág. 11. Véase Pueblo en interés menor R.G.G., 123 D.P.R. 443 (1989).

 Pérez Pérez, op. cit., pág. 21.

 íd., pág. 22.

 Pueblo en interés menor A.L.G.V., 170 D.P.R. 987 (2007); Pueblo v. Suárez, 167 D.P.R. 850, 857 (2006); Pueblo en interés menores A.L.R.G. y F.R.G., supra, pág. 996; Pueblo en interés menor G.R.S., supra, pág. 10; Pueblo en interés menor N.O.R., 136 D.P.R. 949, 955 (1994).

 Art. 37(a) de la Ley de Menores, supra, 34 L.P.R.A. see. 2237.

 D. Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, 6ta ed., San Juan, Inst. Desarrollo del Derecho, 2001, pág. 1.

 R.E. Ortega Vélez, Código Penal de Puerto Rico (2004), San Juan, Eds. Chrisely, 2007, pág. 5.

 Exposición de Motivos de la Ley de Menores, Ley Núm. 88 de 9 de julio de 1986 (1986 Leyes de Puerto Rico 284, 285).

 Véanse: Pueblo v. Vargas, Alcaide, 120 D.P.R. 404, 412 (1988); Pueblo v. Ríos Dávila, supra; Pueblo en interés menor J.M.R., 147 D.P.R. 65, 72 (1998).

 34 L.P.R.A. sec. 2203(t).

 34 L.P.R.A. secs. 2235(b) y 2237(a). Véase, además, Art. II, Sec. 15, Const. E.L.A., L.P.R.A., Tomo 1.

 íd.

 34 L.P.R.A. see. 2208. Regla 13.9 de Procedimiento Criminal, 34 L.P.R.A. Ap. I-A. En Pueblo en interés menores A.L.R. G. y F.R. G., supra, pág. 997, claramente nos expresamos al respecto al señalar que:
“Por ser éste un procedimiento especial, el legislador optó por ampararlo bajo el manto de la confidencialidad, de manera que se evite al máximo cualquier daño al menor transgresor por el estigma que acarrea la imputación de un acto delictivo, conforme a la filosofía proteccionista que permea dicha ley. Esta corriente de pensa-miento sostiene que la identificación del menor transgresor ante la sociedad evita que dicha persona logre su rehabilitación y su saludable integración a la libre comunidad. Una vez se detecta la conducta criminal en un menor, a temprana edad, es posible moldearlo a tiempo y propiciar su desarrollo en un ciudadano cumplidor de las leyes. De ahí que nuestra legislación, en materia de menores, busque protegerlos del escrutinio público y así disminuir el daño que esto pueda causar en su autoestima. De la misma forma esto abona a su reingreso a la sociedad y a su núcleo familiar.” (Énfasis suprimido.)
Así, pues, bajo la Ley de Menores vigente, el Estado ha buscado reducir al mínimo el estigma popular que conlleva todo acto delictivo. Pueblo en interés meno-res A.L.R.G. y F.R.G., supra, pág. 998.

 34 L.P.R.A. see. 2211.

 34 L.P.R.A. sec. 2237(a).

Correa Negrón v. Pueblo, 104 D.P.R. 286 (1975).

 34 L.P.R.A. see. 2209.

 34 L.P.R.A. sec. 2237(e) y 33 L.P.R.A. sec. 4710(d).

 34 L.P.R.A. sec. 2237(d).

 34 L.P.R.A. see. 2238.

 Las Reglas de Procedimiento para Asuntos de Menores fueron aprobadas por este Tribunal el 31 de diciembre de 1986 y remitidas a la Asamblea Legislativa, la cual le hizo varias enmiendas. Fueron aprobadas finalmente mediante la Ley Núm. 33 de 19 de junio de 1987.

 Regla 1.2 para Asuntos de Menores, 34 L.P.R.A. Ap. I-A.

 Pueblo en interés menor F.R.F., 133 D.P.R. 172 (1993); Pueblo en interés menores A.L.R.G. y F.R.G., supra, págs. 996-997.

 Art. 28 de la Ley de Menores, supra, 34 L.P.R.A. see. 2228.

 Esto no implica que no se debe atender el mandato constitucional que esta-blece, como política pública del Estado, el que a la persona que es juzgada y convicta como adulto se le provea el tratamiento adecuado para hacer posible su rehabilita-ción moral y social. Véase Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1.

 Art. 28 de la Ley de Menores, supra, 34 L.P.R.A. see. 2228.

 Regla 246 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

 ^rt. 2 de la Ley de Menores, supra. Véase, además, Exposición de Motivos de dicha ley.

 M.E. Negrón Martínez y otros, Un Modelo puertorriqueño de mediación de conflictos, San Juan, Lexis-Nexis de Puerto Rico, 2001, pág. 1.

 íd., págs. 2-3

 íd., pág. 16.

 íd., págs. 16-17. Véase, además, Informe del Secretariado de la Conferencia Judicial de Puerto Rico sobre métodos alternos para la solución de disputas, octubre de 1980.

 íd.

 J. Trías Monge, El Estado de la Judicatura, 1979-80, en Sociedad, Derecho y Justicia: discursos y ensayos, San Juan, Ed. U.P.R., 1986, pág. 178.

 4 L.P.R.A. secs. 532-532e.

 Exposición de Motivos de la Ley Núm. 19 de 22 de septiembre de 1983 (1983 Leyes de Puerto Rico 422-423).

 4 L.P.R.A. secs. 532-532a.

 4 L.P.R.A. sec. 532c.

 Este Reglamento de Métodos Alternos para la Solución de Conflictos (Regla-mento) fue aprobado mediante Resolución de 25 de junio de 1998, y enmendado posteriormente mediante Resolución de 4 de marzo de 2005. Véase In re Aprobación del Reglamento de Métodos Alternos para la Solución de Conflictos, 1998 T.S.RR. 79; In re Enmdas. Regl. Métodos Alternos, 164 D.P.R. 45 (2005).

 Regla 1.01 del Reglamento, 4 L.P.R.A. Ap. XXIX.

 Regla 1.03(c) del Reglamento, 4 L.P.R.A. Ap. XXIX.

 Regla 7.01(b) del Reglamento, 4 L.P.R.A. Ap. XXIX.

 Regla 7.02(a) del Reglamento, 4 L.P.R.A. Ap. XXIX.

 Véase Regla 1.01 (Declaración de Política Pública) del Reglamento, 4 L.P.R.A. Ap. XXIX.

 S.A. Beauregard, Court-Connected Juvenile Victim-Offender Mediation: An Appealing Alternative for Ohio’s Juvenile Delinquents, 13 Ohio St. J. on Disp. Resol. 1005 (1998); Hon. R. Bennet Burkemper, Jr., Restorative Justice in Missouri’s Juvenile System, 63 J. Mo. B. 128 (2007).

 íd. M. Liebmann, Restorative Justice: How it Works, Londres, Jessica Kings-ley Publishers, 2007, pág. 25.

 L.F. Gardillo Santana, La justicia restaurativa y la mediación penal, Madrid, Ed. Iustel, 2007, pág. 72.

 Beauregard, supra, pág. 1010.

 íd.

 Véase, Liebmann, op. cit., págs. 27-28. Véanse, además: Beauregard, supra; Bennet, supra.

 Beauregard, supra, pág. 1013.

 íd., pág. 1012.

 Véase The Institute of Judicial Administration, Center for Dispute Settlement, National Standards for Court-Connected Mediation Program, disponible en http://www.mbf.org/JAGWG2BADRNationalStandards.pdf (1992).

 Beauregard, supra, pág. 1020.

 Id. Véase Bennet, supra. Por ejemplo, en Ohio, el programa fue promovido por la Corte Suprema del estado y se inició con sesiones de entrenamiento sobre asuntos de mediación víctima-ofensor dentro del contexto del sistema de justicia de menores. Así mismo, en el estado de Missouri se ha utilizado este tipo de mediación en los procesos de menores mediante una selección cuidadosa y preparando a ambas partes para que el proceso sea positivo y restaurador. Beauregard, supra, págs. 1023, 1026-1027; Bennet, supra, pág. 131.

 Nota, Restitution, Rehabilitation, Prevention, and Transformation: Victim-Offender Mediation for First-Time Non-Violent Youthful Offenders, 29 (Núm. 4) Ho-fstra L. Rev. 1365, 1398 (2001).

 Id.

 Id.

 íd.

 Por ejemplo, en Arkansas, Colorado, Delaware, Illinois, Montana, Tennessee y Wisconsin, la legislación incluye específicamente la mediación para sus procesos de menores. Véanse: Ark. Code Ann. 9-31-404 (2009); Colo. Rev. Stat. Ann. 19-2-102 (2008); Del. Code Ann., tit. 11, 9501 (2009); 705 111. Comp. Stat. Ann. 405/5-310 (2009); Mont. Code Ann. 41-5-1304 (2009); Tenn. Code Ann. 16-20-101 (2009); Wis. Stat. Ann. 938.34(5r) (2009).

 Regia 2.02(e) del Reglamento de Métodos Altemos para la Solución de Con-flictos, 4 L.P.R.A. Ap. XXIX.

 Véase Regla 3.05 del Reglamento de Certificación y Educación Continua Relacionado con los Métodos Alternos para la Resolución de Conflictos, Negociado de Métodos Alternos para la Solución de Conflictos de 15 de junio de 1999, pág. 10.

 Pueblo en interés menor A.L.G.V., supra; Pueblo v. Suárez, supra; Pueblo en interés menores A.L.R.G. y F.R.G., supra; Pueblo en interés menor G.R.S., supra; Pueblo en interés menor N.O.R., supra.

 Art. 4 de la Ley Núm. 19, supra; Regla 7.02 del Reglamento de Métodos Alternos para la Solución de Conflictos, supra.

 El 8 de septiembre de 2009 se presentó en el Senado de Puerto Rico el Proyecto del Senado 1108 de la autoría del Presidente de la Comisión de lo Jurídico, Hon. Jose E. González, el cual busca incorporar la mediación a los procesos de menores. En su Exposición de Motivos se expresa que
“[a] pesar de que los procesos judiciales que se celebr[a]n en el interés de un menor en ocasiones son referidos a mediación, ni la Ley de Menores ni la Reglas de Procedimiento para Asuntos de Menores contemplan expresamente la posibilidad de utilizar [e]ste mecanismo como método alterno para la solución de conflictos.” (Enfa-sis suplido.)

 Art. 38 de la Ley de Menores, 34 L.P.R.A. see. 2238.

 El Art. 26 de la Ley de Menores, supra, 34 L.P.R.A. see. 2226, hace referen-cia a la Ley de Vehículos y Tránsitos de Puerto Rico, abriendo la posibilidad de la transacción conforme a esa ley, pero por infracciones de menores denominadas “fal-tas administrativas”.

 Regla 1.01 del Reglamento, supra.

 M.A. Corriero, Judging Children as Children: A proposal for a Juvenile Justice System, Philadelphia, Temple University Press, 2006, págs. 22-23.

 íd., pág. 23.

 Pérez Pérez, op. cit., pág. 11.