Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X-DJ 2024-062C.

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>V.<br><br>LUIS JOSÉ IRIZARRY ZAPATA<br><br>Apelante | KLAN202500292<br><br>Consolidado con<br><br>KLAN202500386 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: ISCR202100809 ISCR202100810 ISCR202100812<br><br>Por: Art. 6.22 Ley de Armas Art. 6.09 Ley de Armas Art. 15, Ley 8 |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 29 de enero de 2026.

El 7 de abril de 2025, compareció ante este Tribunal de Apelaciones, el señor Luis José Irizarry Zapata (en adelante, señor Irizarry Zapata o apelante), mediante recurso de *Apelación* con identificación alfanumérica KLAN202500292. Por medio de este, nos solicita la revocación de dos (2) sentencias emitidas el 10 de marzo de 2025 y notificadas el 21 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. A través de estas, el foro primario encontró culpable al señor Irizarry Zapata por infracción a los Arts. 6.09 y 6.22 de la Ley Núm. 168 de 11 de diciembre de 2019, según enmendada, conocida como la *Ley de Armas de Puerto Rico*, 25 LPRA § 466h y 466u (en adelante, Ley Núm. 168-2019). Consecuentemente, el tribunal *a quo* le impuso una pena de reclusión de dieciocho (18) años por portación, posesión o uso ilegal de armas largas semiautomáticas, automáticas

o escopeta de cañón cortado, y otra pena de tres (3) años de cárcel por fabricación, distribución, posesión y uso de municiones. Adicionalmente, el foro recurrido le impuso una pena especial de trescientos dólares ($300.00) en cada caso.

Posteriormente, el 5 de mayo de 2025, el señor Irizarry Zapata compareció mediante un segundo recurso de *Apelación* con identificación alfanumérica KLAN202500386, en el que solicita la revocación de la *Re-Sentencia* emitida por el foro primario el 15 de abril de 2025. A través de esta, el foro recurrido condenó al apelante a una pena de reclusión de siete (7) años, dos (2) meses y doce (12) días de cárcel, luego de encontrarlo incurso por infracción al Art. 15 de la Ley Núm. 8 de 5 de agosto de 1987, según enmendada, conocida como la *Ley para la Protección de la Propiedad Vehicular*, 9 LPRA § 3214 (en adelante, Ley Núm. 8 de 5 de agosto de 1987). Además, el tribunal primario también impuso una pena especial.

A los fines de la economía procesal, y según fue solicitado por el apelante[1], el 28 de mayo de 2025, esta Curia emitió *Resolución* mediante la cual, ordenó la consolidación de los recursos KLAN202500292 y KLAN202500386.

Por los fundamentos que exponemos a continuación, se confirman las sentencias apeladas.

**I**

Los eventos fácticos y procesales atinentes a la controversia ante nuestra consideración se esbozan a continuación.

El 23 de abril de 2020, el Ministerio Público presentó varias denuncias en contra del señor Irizarry Zapata, por hechos cometidos el 21 de abril de 2020.[2] Según surge de los autos originales, y en lo pertinente al asunto ante nuestra consideración, las denuncias

---

[1] El 23 de mayo de 2025, el señor Irizarry Zapata solicitó la consolidación de los casos mediante escrito intitulado *Moción Solicitando Consolidación de Escritos de Apelación.*

[2] Casos ISCR202100809, ISCR202100810 y ISCR202100812.

imputaban la comisión de los siguientes delitos: dos (2) cargos por violación a los Artículos 6.09 y 6.22 de la Ley Núm. 168-2019, *supra*,[3] y un (1) cargo por infracción al Artículo 15 de la Ley Núm. 8, *supra*.[4] Tras evaluar la prueba presentada por el Ministerio Público, el foro primario halló causa para arresto contra el apelante.

Así las cosas, el 2 de julio de 2021, el foro primario celebró la vista preliminar, donde determinó causa probable para acusar al señor Irizarry Zapata por los delitos imputados. En lo atinente, los pliegos acusatorios expusieron lo siguiente:

**ISCR202100809**

Por el delito de: Ley 168 Art. 6.22 Grave (2019) – Fabricación, Distribución, Posesión y Uso de Municiones; Importación

Cometido en: Mayagüez, P.R. [el] 21 de abril de 2020 [a la] 1:30pm de la siguiente manera:

El referido acusado LUIS JOSÉ IRIZARRY ZAPATA, allá en o para el día 21 de abril de 2020 y en Mayagüez, Puerto Rico que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Mayagüez, ilegal, voluntaria, maliciosa y criminalmente, violó lo dispuesto en el Artículo 6.22 [de la] Ley de Armas de Puerto Rico. Consistente en que POSE[Í]A y ALMACENABA, sin autorización 201 (doscientas una) municiones, calibre 7.62 x 39mm, sin estar autorizado por Ley para ello.

**ISCR202100810**

Por el delito de: Ley 168 Art. 6.09 Grave (2019) – Portación, Posesión o Uso Ilegal de Armas Largas Semiautomáticas

Cometido en: Mayagüez, P.R. [el] 21 de abril de 2020 [a la] 1:30pm de la siguiente manera:

El referido acusado LUIS JOSÉ IRIZARRY ZAPATA, allá en o para el día 21 de abril de 2020 y en Mayagüez, Puerto Rico que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Mayagüez, ilegal, voluntaria, maliciosa y criminalmente, violó lo dispuesto en el Artículo 6.09 de la Ley de Armas de Puerto Rico. Consistente en que POSE[Í]A, un arma de fuego AR-15 semiautomática, multi calibre, marca, Demons Tactical, número de serie DMT-DT418, sin estar autorizado por Ley para ello.

---

[3] Casos ISCR202100809 y ISCR202100810.
[4] Caso ISCR202100812.

**ISCR202100812**

Por el delito de: Ley 8 Art. 15 Grave (1987) – Comercio ilegal de vehículos y piezas – Enmendada por Ley Núm. 282 de 14 de *sic*

Cometido en: Mayagüez, P.R. [el] 21 de abril de 2020 [a la] 1:30pm de la siguiente manera:

El referido acusado LUIS JOSÉ IRIZARRY ZAPATA, allá en o para el día 21 de abril de 2020 y en Mayagüez, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Mayagüez, ilegal, voluntaria, maliciosa y criminalmente violó lo dispuesto en el Artículo 15 de la Ley 8 para la Protección de la Propiedad Veh[i]cular del 5 de agosto de 1987, según enmendada. Consistente en que ilegalmente poseía el vehículo de motor marca Toyota, modelo Rav-4, color rojo, año 2018, tablilla JEO-505 y número de serie 2T3WFREV9JW513715, a sabiendas de que fue obtenido mediante apropiación ilegal.

El juicio en su fondo fue celebrado los días 5, 6, 7, 8 y 30 de agosto de 2024 y el 22 de octubre de 2024. A este, compareció el señor Irizarry Zapata, representado por el Licenciado Ivandeluis Miranda, el Licenciado Roland Arroyo Rojas y el Licenciado Harry Padilla Martínez. Asimismo, en representación del Pueblo de Puerto Rico, compareció la fiscal Frances M. Bravo Negrón (en adelante, Fiscal Bravo Negrón).

La prueba documental presentada por el Ministerio Público y admitida por el foro primario constó de las siguientes piezas:

**Exhibit A1-A57** – 57 fotos 3x5 tomadas en la calle Frank Souffront
**Exhibit B1-B18** – 18 fotos 3x5 tomadas en la unidad Vehículos Hurtados de Mayagüez
**Exhibit C1-C80** – 80 fotos 3x5 tomadas en la Unidad de Vehículos Hurtados
**Exhibit 1** – Advertencias Miranda
**Exhibit 2** – Prueba de campo
**Exhibit 3** – Sobre #394011
**Exhibit 4** – Inventario de Propiedad Ocupada
**Exhibit 5** – Orden de Registro y Allanamiento
**Exhibit 6** – Inventario de Propiedad Ocupada
**Exhibit 7** – Cadena de Custodia de Evidencia
**Exhibit 8** – Maleta y Sabana
**Exhibit 9** – AR15 DMT-DT418
**Exhibit 10A** – Magazine crema marca PMAG
**Exhibit 10B** – Magazine negro
**Exhibit 11** – Bolsa con 201 balas y 1 tubo cilíndrico
**Exhibit 12A** – Media Embalada
**Exhibit 12B** – Llaves
**Exhibit 12C** – Correa Marrón

**Exhibit 12D** – Llavero colgante logo Fornite
**Exhibit 13** – Magazine verde
**Exhibit 14** – Casquillo y proyectil
**Exhibit 15** – Informe de Incidente
**Exhibit 16** – Informe de Incidente
**Exhibit 17** – Solicitud de Servicio Forense Provisional
**Exhibit 18** – Solicitud de Servicio Forense
**Exhibit 19** – Certificado de Análisis
**Exhibit 20** – Notificación al Cliente
**Exhibit 21** – Certificado de Análisis Enmendado
**Exhibit 22** – Carta Explicativa
**Exhibit 24** – Certificado de Examen[5]

Asimismo, el Ministerio Público presentó como testigo a los siguientes:

1. Sargento Carlos R. Rodriguez Ibarra
2. Sargento Eduardo O. Quiñones Camacho
3. Agente Miguel Octaviani Reyes
4. Sargento Jean Carlos Lamberty Aldea
5. Damaris Colón Vélez
6. María Hernández Miranda
7. Aramis Agosto Vega
8. Sonia Ivette Cruz García

Por su parte, la defensa no presentó prueba documental ni testigos.

Conforme surge de la *Minuta* del 22 de octubre de 2024, tras evaluar la prueba documental y testifical, el Tribunal de Primera Instancia halló culpable al señor Irizarry Zapata por infracción a los Artículos 6.09 y 6.22 de la Ley Núm. 168-2019, *supra*, y al Artículo 15 de la Ley Núm. 8 de 5 de agosto de 1987, *supra*.

Posteriormente, el 10 de marzo de 2025, notificadas el 21 de marzo de 2025, el Tribunal de Primera Instancia emitió tres (3) *Sentencias* en contra del apelante. Mediante estas, el foro *a quo* condenó al apelado a cumplir las siguientes penas: tres (3) años de cárcel por fabricación, distribución, posesión y uso de municiones (caso ISCR202100809); dieciocho (18) años de reclusión por portación, posesión o uso ilegal de armas largas semiautomáticas,

---

[5] Surge de la transcripción de la prueba oral (TPO) del juicio en su fondo, que durante el testimonio del señor Aramis Agosto Vega, el Ministerio Público le mostró la identificación #15, y esta fue admitida en evidencia y marcada como Exhibit #23. Véase, TPO, Libro 5, pág. 197, líneas 10-20; pág. 198, líneas 1-4. No obstante, hacemos constar que tal exhibit no obra en los autos originales, ni se incluyó en la *Relación de Evidencia* que forma parte de este.

automáticas o escopeta de cañón cortado (caso ISCR202100810) y, ocho (8) años de reclusión por comercio ilegal de vehículos y piezas (caso ISCR202100812). Adicionalmente, el foro recurrido le impuso una pena especial de trescientos dólares ($300.00) por cada cargo.

No conteste con la determinación del foro primario en el caso ISCR202100812, el 13 de marzo de 2025, el señor Irizarry Zapata presentó *Moción Solicitando Reconsideración de Sentencia*.[6] En esta, arguyó que, previo a dictar sentencia, el foro primario había expresado que "consideraba que existían atenuantes"[7] en los casos. Sin embargo, adujo que, al emitir su dictamen, el tribunal *a quo* dictó sentencia con atenuantes en los casos relacionados a la Ley Núm. 168-2019, *supra*, mas, impuso la pena fija en cuanto al caso sobre infracción al Artículo 15 de la Ley Núm. 8 de 5 de agosto de 1987, *supra*. A esos efectos, solicitó que se dictara sentencia atenuada en relación a la infracción a este último, y se redujera la pena impuesta.

Ante ello, el 1ro de abril de 2025, el foro primario señaló una vista para el 15 de abril de 2025.[8]

En el ínterin, el 7 de abril de 2025, el señor Irizarry Zapata acudió ante este foro revisor mediante el recurso de *Apelación* con designación alfanumérica KLAN202500292, impugnando las determinaciones emitidas por el Tribunal de Primera Instancia en los casos ISCR202100809 y ISCR202100810. En este, esgrimió los siguientes señalamientos de error:

(a) Cometió error el TPI al admitir el testimonio del agente de la Policía Jean Carlos Lamberty Aldea, siendo el mismo, prueba de referencia, en cuanto a si el apelante tenía o no licencia de armas al momento de los hechos. Y, admitiendo una certificación negativa de la Policía para establecer que el apelante no tenía licencia de armas al momento de los hechos, siendo dicho documento también prueba de referencia y utilizando

---

[6] Apéndice del recurso KLAN202500292, Exhibit 5.
[7] *Íd.*, pág. 2.
[8] *Íd.*, Exhibit 6.

únicamente el testimonio del agente Lambert Aldea.

(b) Cometió error el TPI al declarar culpable al apelante de una infracción al Art. 6.09 de la Ley de Armas, a[u]n cuando el pliego acusatorio, de imputar algún delito, lo que imputaba era una infracción al Art. 6.05 de dicha ley.

(c) Cometió error el TPI al declarar culpable y sentenciar al apelante, pues la culpabilidad de [e]ste no se probó más allá de duda razonable como lo requiere el Art. II § 11 de la Constitución de Puerto Rico y el debido proceso de ley de la Constitución de Estados Unidos.

(d) Que de ser posible que alguno de los errores antes aludidos, por sí solos, no fueran perjudiciales o suficientes para requerir la revocación de la sentencia condenatoria, lo cierto es que éstos apreciados en conjunto y por su efecto acumulativo, resulta claro que el apelante no tuvo un juicio justo e imparcial como lo requiere la Constitución de Estados Unidos y la de Puerto Rico.

Devuelta al foro primario, el 15 de abril de 2025, notificada el 29 de abril de 2025, el tribunal recurrido emitió *Re-Sentencia* en el caso ISCR202100812, e impuso una pena atenuada de siete (7) años, dos (2) meses y doce (12) días de cárcel. Además, el tribunal *a quo* mantuvo la pena especial impuesta.[9]

En vista de todo lo anterior, el apelante quedó condenado a una pena total de veintiocho (28) años, dos (2) meses y doce (12) días de reclusión.

En desacuerdo aún con dicha determinación, el 5 de mayo de 2025, el señor Irizarry Zapata acudió ante nos mediante un segundo recurso de *Apelación* con identificación alfanumérica KLAN202500386, y señaló como único error el siguiente:

Cometió error el TPI al declarar culpable y sentenciar al apelante, pues la culpabilidad de [e]ste no se probó más allá de duda razonable como lo requiere el Art. II § 11 de la Constitución de Puerto Rico y el debido proceso de ley de la Constitución de Estados Unidos.

---

[9] Apéndice del recurso KLAN202500386, Exhibit 2.

A los fines de la economía procesal, y según fue solicitado por el apelante[10], el 28 de mayo de 2025, esta Curia emitió *Resolución* mediante la cual, ordenó la consolidación de los casos KLAN202500292 y KLAN202500386.

Tras un sin número de trámites procesales innecesarios pormenorizar, el 18 de agosto de 2025, el señor Irizarry Zapata presentó la Transcripción de la Prueba Oral (TPO). Posteriormente, el 14 de octubre de 2025, instó su alegato suplementario. Más adelante, el 15 de diciembre de 2025, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, compareció mediante *Alegato de el* [sic] *Pueblo de Puerto Rico*.

Con el beneficio de la comparecencia de las partes, así como de la TPO y los autos originales del caso, procedemos a resolver.

**II**

### A. Deferencia Judicial

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical. *Peña Rivera v. Pacheco Caraballo*, 213 DPR 1009, 1025 (2024), citando a *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022); *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Peña Rivera v. Pacheco Caraballo*, supra, citando a *Ortiz Ortiz v. Medtronic*, supra; *Pueblo v. Hernández Doble*, supra.

---

[10] El 23 de mayo de 2025, el señor Irizarry Zapata solicitó la consolidación de los casos mediante escrito intitulado *Moción Solicitando Consolidación de Escritos de Apelación.*

No obstante, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos no debemos intervenir con las determinaciones ni las adjudicaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto. *Peña Rivera v. Pacheco Caraballo*, supra, pág. 1024, citando a *Ortiz Ortiz v. Medtronic*, supra, pág. 778; *Pueblo v. Hernández Doble*, supra; *Santiago Ortiz v. Real Legacy et al.*, supra.

Como sabemos, "[l]a tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad." *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013), citando a *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). Es por lo que, nuestra más Alta Curia ha definido la *discreción* como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *BPPR v. SLG Gómez-López*, 213 DPR 314, 335 (2023); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 210 (2023). *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020), citando a *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna." *Citibank et al. v. ACBI et al.*, supra, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435; *Hietel v. PRTC*, 182 DPR 451, 459 (2011); *Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977). Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *SLG Zapata-Rivera v. J.F. Montalvo*, supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997).

Conforme a lo anterior, al revisar cuestiones de hecho en condenas criminales, el Alto Foro ha expresado que los foros apelativos podrán intervenir con la apreciación del tribunal primario cuando de una evaluación minuciosa surjan "serias dudas, razonables y fundadas, sobre la culpabilidad del acusado". *Pueblo v. Santiago, et al.*, 176 DPR 133, 148 (2009). Esto es, si de un análisis ponderado de la prueba desfilada ante el foro recurrido surge duda razonable y fundada sobre si la culpabilidad del acusado fue establecida más allá de duda razonable, este Tribunal tiene el deber de dejar sin efecto el fallo o veredicto condenatorio. *Pueblo v. Casillas, Torres*, 190 DPR 398, 417 (2014); *Pueblo v. Carrasquillo Carrasquillo*, 102 DPR 545, 551 (1974).

### B. Prueba de Referencia

La Regla 801(c) de Evidencia, 32 LPRA Ap. VI, R. 801 (c), define la prueba de referencia como aquella declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado. *Pueblo v. Lugo López*, 214 DPR 660 (2024); *Pueblo v. Zeno Torres*, 211 DPR 1, 17 (2022); *Nieves López v. Rexach Bonet*, 124 DPR 427, 433 (1989).

Como regla general, la prueba de referencia es inadmisible como evidencia. 32 LPRA Ap. VI, R. 804. Esta regla de exclusión está fundada primordialmente en la ausencia de garantías circunstanciales de confiabilidad y exactitud, y en el hecho de que la persona que hace la aseveración no está disponible para ser contrainterrogada. *P.N.P. v. Rodríguez Estrada, Pres. C.E.E.*, 123 DPR 1, 34 (1988).[11] Sin embargo, las Reglas de Evidencia disponen de circunstancias en las cuales la prueba de referencia podrá ser admisible.

---

[11] Véase también, *Pueblo v. Zeno Torres*, supra.

En lo pertinente, la Regla 805(f) de Evidencia, 32 LPRA Ap. VI, R. 805(f), establece lo siguiente:

[...]

(F) *Récords de actividades que se realizan con regularidad*: Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(K) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. El término *negocio*, según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro.

[...]

## C. *Pliego Acusatorio*

En nuestro ordenamiento jurídico, el derecho de un acusado a la debida notificación de los cargos presentados en su contra tiene rango constitucional. Tal protección se desprende de la Enmienda Sexta de la Constitución Federal[12] y del Artículo II, Sección 11 de nuestra Constitución[13], la cual dispone que en todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de ésta, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado y a gozar de la presunción de inocencia.

---

[12] Const. EE.UU. Enm. VI, LPRA Tomo 1, ed. 2023, pág. 198.
[13] Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2023, pág. 359.

*Pueblo v. Vélez Rodríguez,* 186 DPR 621, 627 (2012); *Pueblo v. Montero Luciano,* 169 DPR 360, 372 (2006).

Tal mandato constitucional, se desprende a su vez del debido proceso de ley consagrado en la Enmienda Quinta de la Constitución Federal[14], así como del Art. II, Sec. 7 de la nuestra[15], el cual exige que el acusado esté informado adecuadamente de la naturaleza y extensión del delito que se le imputa.

Para cumplir con dicha obligación de notificación, el Ministerio Público goza del mecanismo de la acusación o denuncia. *Pueblo v. Vélez Rodríguez,* supra, pág. 627. La acusación, —que constituye el mecanismo aplicable a los delitos graves— es definida como "la alegación escrita hecha por un fiscal al Tribunal de Primera Instancia en la cual se imputa a una persona la comisión de un delito". 34 LPRA Ap. II, R. 34. *Pueblo v. Pagán Rojas,* 187 DPR 465, 481 (2012). El contenido de la acusación se rige por la Regla 35 de Procedimiento Criminal, 34 LPRA Ap. II, R. 35, la cual establece que la acusación habrá de contener "una exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común". 34 LPRA Ap. II, R. 35(c). Véase también, *Pueblo v. Pagán Rojas,* supra.

Ahora bien, dicha exposición "no tendrá que emplear estrictamente las palabras usadas en la ley y podrá emplear otras que tengan el mismo significado". 34 LPRA Ap. II, R. 35(c); *Pueblo v. Vélez Rodríguez,* supra; *Pueblo v. Ríos Dávila,* 143 DPR 687, 698-699 (1997); *Pueblo v. Calvino Cereijo,* 110 DPR 691, 693-694 (1981). En otras palabras, la acusación no tiene que emplear literalmente la nomenclatura utilizada en la disposición legal. Tampoco es necesario calificar el delito con arreglo a la Ley, especificar su grado,

---

[14] Const. EE.UU. Enm. V, LPRA Tomo 1, ed. 2023, pág. 191.
[15] Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1, ed. 2023, págs. 304-305.

ni expresar la totalidad de las circunstancias en que se cometió. *Pueblo v. Santiago Cedeño,* 106 DPR 663, 666 (1978). Esto pues, su propósito no es cumplir mecánicamente con una forma ritual, sino informar al acusado el delito que se le imputa, de tal suerte que pueda preparar adecuadamente su defensa. *Pueblo v. Rivera Ortiz,* 209 DPR 402, 417 (2022); *Pueblo v. Meléndez Cartagena,* 106 DPR 338, 341 (1977).

### D. Ley de Armas

La Segunda [E]nmienda de la Constitución de los Estados Unidos dispone, en lo pertinente, que "no se coartará el derecho del pueblo a tener y portar armas". Emda. II, Const. EE. UU., LPRA, Tomo 1. Al interpretar esa disposición, el Tribunal Supremo de los Estados Unidos ha expresado que ese derecho no es ilimitado. Es decir, no hay un derecho a poseer y portar cualquier arma de cualquier manera y para cualquier propósito. Véanse, *McDonald v. City of Chicago, Ill.,* 561 U.S. 742, 786 (2010); *District of Columbia v. Heller,* 554 U.S. 570, 626 (2008). De esa forma, quedó claro que el Estado está facultado para regular la posesión, portación y venta de las armas de fuego. Acorde con lo anterior, el Estado, mediante ese poder inherente de reglamentación, y con el fin de promover una mayor seguridad y un mejor bienestar público para el Pueblo de Puerto Rico, aprobó la Ley Núm. 168-2019, *supra.*

En lo pertinente al asunto ante nuestra consideración, el Artículo 6.09 de la Ley Núm. 168-2019, *supra,* establece que:

> Toda persona que porte, posea o use sin autorización de esta Ley un arma larga semiautomática, una ametralladora, carabina, rifle, así como cualquier modificación de estas o cualquiera otra arma que pueda ser disparada automáticamente o escopeta de cañón cortado a menos de dieciocho (18) pulgadas, y que pueda causar grave daño corporal, o cualquier pieza o artefacto que convierte en arma automática cualquier arma de fuego, incurrirá en delito grave, y convicta que fuere será sancionada con pena de reclusión por un término fijo de veinticuatro (24) años, sin derecho a sentencia suspendida, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o a cualquier

alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de treinta y seis (36) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de dieciocho (18) años.

No constituirá delito la posesión o uso de estas armas en el cumplimiento del deber por los agentes del Negociado de la Policía o por otros agentes del orden público debidamente autorizados. Tampoco constituirá delito la posesión o uso de estas armas según permitido en otros Artículos de esta Ley.

Por otro lado, el Artículo 6.22 del referido estatuto, *supra*, tipifica como delito la fabricación, distribución, posesión, importación y uso de municiones. En detalle, dispone como sigue:

Se necesitará una licencia de armas vigente, de armero o ser un agente del orden público, según sea el caso, para fabricar, solicitar que se fabrique, ofrecer, comprar, vender o tener para la venta, guardar, almacenar, entregar, prestar, traspasar o en cualquier otra forma disponer de, poseer, usar, portar o transportar municiones, conforme a los requisitos exigidos por esta Ley. Se necesitará un permiso expedido por el Negociado de la Policía para comprar pólvora. Toda infracción a este Artículo constituirá delito grave, y será sancionada con pena de reclusión por un término fijo de seis (6) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de doce (12) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de tres (3) años.

Se necesitará una licencia de armero para importar municiones. Toda infracción a este Artículo constituirá delito grave, y será sancionada con pena de reclusión por un término fijo de seis (6) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de doce (12) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de tres (3) años.

Será considerado como circunstancia agravante al momento de fijarse la sentencia, incurrir en cualquiera de las conductas descritas en este Artículo cuando las municiones sean de las comúnmente conocidas como "armor piercing". No constituirá delito la fabricación, venta o entrega de las municiones antes descritas para uso del Negociado de la Policía y otros agentes del orden público del Gobierno de Puerto Rico o de Estados Unidos o para el uso de las Fuerzas Armadas de Estados Unidos.

### E. La Duda Razonable

Según nuestro sistema de enjuiciamiento criminal, toda persona debe ser hallada culpable más allá de duda razonable. Esto es principio consustancial del precepto constitucional que dispone que "[e]n todos los procesos criminales, el acusado disfrutará del derecho [...] a gozar de la presunción de inocencia". Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2023, pág. 359. Cónsono con esta disposición constitucional, nuestro esquema procesal penal establece que "[e]n todo proceso criminal, se presumirá inocente el acusado mientras no se probare lo contrario y en todo caso de existir duda razonable acerca de su culpabilidad, se le absolverá". 34 LPRA Ap. II, R. 110; *Pueblo v. Casillas, Torres*, supra, pág. 414); *Pueblo v. Irizarry*, 156 DPR 780, 786 (2002).

Es por ello que, en nuestro sistema de justicia criminal, el Ministerio Público tiene la obligación de presentar suficiente evidencia sobre todos los elementos del delito y su conexión con el acusado a fin de establecer su culpabilidad más allá de duda razonable. *Pueblo v. Negrón Ramírez*, 213 DPR 895, 907 (2024); *Pueblo v. Toro Martínez*, 200 DPR 834, 856 (2018); *Pueblo v. Casillas, Torres*, supra. Esto constituye uno de los imperativos más básicos y esenciales del debido proceso de ley. *Pueblo v. Casillas, Torres*, supra; *Pueblo v. Irizarry*, supra.

Ahora bien, el Tribunal Supremo de Puerto Rico ha expresado que tal estándar de exigencia probatoria no significa que el Ministerio Público tiene que presentar prueba que establezca la culpabilidad del acusado con certeza matemática. *Pueblo v. Negrón Ramírez*, supra; *Pueblo v. Toro Martínez*, supra, *Pueblo v. Casillas, Torres*, supra. Lo que se requiere es prueba suficiente que "produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido". *Íd.*; *Pueblo v. Arlequín Vélez*, 204 DPR 117, 147 (2020).

En este particular, la duda razonable que acarrea la absolución del acusado no es una duda especulativa o imaginaria, ni cualquier duda posible. *Pueblo v. Irizarry*, supra, pág. 788; *Pueblo v. García Colón I*, 182 DPR 129, 175 (2011). Más bien, es aquella duda producto de una consideración justa, imparcial y serena de la totalidad de la evidencia del caso. *Íd*. En síntesis, existe duda razonable cuando el juzgador de los hechos siente en su conciencia insatisfacción o intranquilidad con la prueba de cargo presentada. *Íd*. En atención a ese principio, los foros apelativos deben tener la misma tranquilidad al evaluar la prueba en su totalidad. *Pueblo v. Carrasquillo Carrasquillo*, supra, págs. 541-542.

Expuesta la norma jurídica, procedemos a aplicarla a los hechos ante nuestra consideración.

### III

Para facilitar una exposición clara y ordenada, los señalamientos de error esbozados por el apelante serán discutidos de la siguiente manera: en primer lugar y por separado, los señalamientos **a** y **b** del caso KLAN202500292; seguidamente, y de manera conjunta, el señalamiento **c** del caso KLAN202500292, y el único señalamiento del caso KLAN202500386; por último, el error **d** del caso KLAN202500292, de manera independiente.

En su señalamiento de error **a**, el señor Irizarry Zapata sostiene que, el foro primario incidió al admitir tanto el testimonio del Sargento Jean Carlos Lamberty Aldea (en adelante, Sgto. Lamberty Aldea), como una certificación negativa emitida por la Policía de Puerto Rico, para establecer que no contaba con una licencia de armas. Alega que, tanto el testimonio como la certificación constituyen prueba de referencia.

En primer orden, advertimos que, luego de haber examinado detenidamente los autos originales del caso, así como la TPO del juicio en su fondo, no surge que el Ministerio Público hubiese

presentado certificación negativa alguna relacionada a la existencia o inexistencia de una licencia de armas con respecto al apelante, por lo que no cabe hablar de ello. Así pues, en esencia, nos corresponde determinar si, el testimonio del Sgto. Lamberty Aldea constituye prueba de referencia. Respondemos en la negativa. Veamos.

El Sgto. Santiago Lamberty compareció al juicio en su fondo como testigo del Ministerio Público. Como parte de su testimonio, narró que, para la fecha de los hechos, fungía como agente investigador de la sección de Asuntos Confidenciales de Vehículos Hurtados.[16] Declaró que, como parte de sus funciones, investigaba confidencias y todo lo relacionado a vehículos hurtados.[17] A preguntas de la fiscal, expresó que, al investigar una querella sobre un vehículo hurtado, corroboraba la información en los sistemas a los que la Policía de Puerto Rico le daba acceso.[18] Precisó que, tenía acceso al sistema *David Plus*, al sistema *RCI*, al sistema *Iso Open Search* y al sistema *NCIC*[19], a los cuales accedía constantemente todos los días.[20]

En lo relativo a su investigación en el caso, el Sgto. Lamberty Aldea declaró que, verificó en uno de los sistemas disponibles de la Policía de Puerto Rico si el apelante contaba con licencia de armas.[21] Sobre este particular, atestó lo siguiente:

> Sgto. Lamberty: Entonces una vez ya tenía todo[s] los datos del arrestado en ese momento. También hice, y luego que culminé el allanamiento hice la práctica mía como es parte de las obligaciones y funciones mías y verificar el rastreo lo de esa arma. También dentro de eso también verifiqué si el caballero Luis Irizarry Zapata tenía licencia de arma o no…[22]
>
> [...]

---

[16] TPO, libro 3, pág. 95, líneas 19-20; pág. 96, líneas 1-5.
[17] *Íd.*, pág. 96, líneas 6-19.
[18] *Íd.*, pág. 98, líneas 2-9.
[19] *Íd.*, pág. 99, líneas 4-15.
[20] *Íd.*, pág. 98, líneas 12-15.
[21] TPO, libro 4, pág. 99, líneas 8-14.
[22] *Íd.*, pág. 100, líneas 1-12.

Fiscal Bravo: Agente es que en [sic] la pregunta va dirigida con relación específicamente a la licencia de armas, ¿qué gestión hizo usted?

Sgto. Lamberty: Hice una búsqueda en el sistema el cual tengo acceso.

Fiscal Bravo: ¿En qué sistema?

Sgto. Lamberty: El sistema de CIW RCI que es el que me da información de los casos previos del detenido que tengo ante mi ante la investigación…[23]

[…]

Fiscal Bravo: ¿Agente cuando usted dice que usted accesó al sistema, de qué manera usted accesó al sistema?

Sgto. Lamberty: Mi computadora como también hace también el sistema de Obras Públicas el *laping* que declaré anteriormente. Obviamente cada sistema conlleva mi número, mi nombre de usuario distinto.[24]

[…]

Fiscal Bravo: Con relación a esa búsqueda que usted hizo licencia de arma.

Sgto. Lamberty: Tengo mi número de usuario, tengo mi contraseña para esa plataforma. Esa plataforma es distinta que los demás. Esa plataforma a mi por lo menos no permite imprimir, solamente me permite observar nada más, ni modificar ni alterar ninguna información de la que está ahí. Solamente observar para que hay una investigación.

Fiscal Bravo: ¿Y de d[ó]nde surge la información que provee ese sistema?

Sgto. Lamberty: El Sistema CIW.

Fiscal Bravo: Okay. Le pregunto este agente pues habiendo realizado en este caso en particular, ¿cómo usted accedió la información del sistema?

Sgto. Lamberty: Con el nombre del arrestado mío en ese momento Luis Irizarry Zapata y su número de seguro social completo.[25]

[…]

Fiscal Bravo: […] ¿Cómo llegan los datos al sistema que usted está accediendo?

Sgto. Lamberty: Esos datos llegan de, está las agencias de ley y orden como por lo menos el CIW. Este caso base

---

[23] *Íd.*, pág. 101, líneas 6-14.
[24] *Íd.*, pág. 101, líneas 13-19.
[25] *Íd.*, pág. 103, líneas 2-10.

de datos de nuestro sistema de Justicia que se nutre de eso y el sistema NCIC.

Fiscal Bravo: ¿Y entonces, y cómo funciona ese sistema?

Sgto. Lamberty: Ese Sistema hay que solicitarlo también al Comisionado de la Policía que autorice el acceso al mismo. […] [S]e solicita el acceso al mismo de ser autorizado se le provee un nombre, un número de usuario y una contraseña. La contraseña la crea uno para poder tener acceso a esa plataforma. Y poder acceder la información que uno requiere.

Fiscal Bravo: ¿Y el acceso que usted tiene a esa plataforma qué tipo de acceso es? [26]

Sgto. Lamberty: Es un acceso solamente para observar información nada más, puedo verificarla ahí este si fue fichado anteriormente, si tiene licencia de arma, casos previo de RCI, si tiene casos actuales RCI. Pero no puedo ir para (Inaudible) solamente es para observar y nada más. Y Juez también está, también ahí dentro esa plataforma también el sistema DAVID también.

Fiscal Bravo: Okey. Y le pregunto, ¿usted dijo que ese sistema recoge varios datos y esos datos son provistos por quiénes?

[…]

Sgto. Lamberty: Por el [N]egociado de la Policía de Puerto Rico.[27]

[…]

Fiscal Bravo: Okey. ¿Y la plataforma que usted indicó que utilizó en este caso para hacer la búsqueda de licencia de arma cuál fue?

Sgto. Lamberty: Así mismo se llama licencia de arma.

Fiscal Bravo: Licencia de arma. ¿Y esa, la información en ese sistema de licencia de arma de qué se nutre?

Sgto. Lamberty: Del registro, de la licencia de arma que el Negociado de la Policía. Inaudible. [28]

[…]

Fiscal Bravo: Okey. ¿Y en este caso en particular qué procedió hacer usted?

Sgto. Lamberty: Pues procedí a verificar los sistemas. Para verificar también, conocer si la persona también tenía orden de arresto o no tenía orden de arresto, si existían convicciones anteriores, si no tenía, si había

---

[26] *Íd.*, pág. 105, línea 20; pág. 106, líneas 1-9, 13-20.
[27] *Íd.*, pág. 107, líneas 1-11, 14.
[28] *Íd.*, pág. 109, línea 20; pág. 110, líneas 1-7.

convicciones anteriores. Ese fue el fin de verificar la información del y una vez también verificar ya que había un arma ocupada si él tiene licencia o no de arma de fuego.[29]

[...]

Fiscal Bravo: Agente haciendo, como le estaba indicando al Tribunal el procedimiento que usted siguió para la verificación de la licencia de armas de, del acusado. Le pregunto, ¿cuál fue el resultado de dicha gestión?

Sgto. Lamberty: Que no tenía licencia de arma.[30]

De conformidad con el derecho reseñado, y tras evaluar el testimonio del Sgto. Lamberty Aldea, coincidimos con el apelante en que el referido testimonio constituye prueba de referencia, toda vez que versa sobre una información que observó en un récord generado fuera del tribunal. No obstante, razonamos que su testimonio logró establecer que el sistema de "licencia de armas" constituye un récord de actividades que se realizan con regularidad.

El testimonio del Sgto. Lamberty Aldea demostró que el mencionado sistema constituye una plataforma oficial del Estado, utilizada de forma cotidiana y continua, por agentes autorizados en el curso ordinario de sus funciones. Dicho uso regular genera una presunción de confiabilidad que permite razonar que, sus datos son confiables y cumplen con los requisitos que exige el ordenamiento para ser admitido como evidencia.

Así las cosas, concluimos que el testimonio del Sgto. Lamberty Aldea satisfizo los requisitos de la Regla 805(f) de las de Evidencia, *supra*, por lo que resulta admisible. Consecuentemente, resolvemos que el señalamiento de error **a** no se cometió.

En su señalamiento de error **b**, el apelante sostiene que, el Tribunal de Primera Instancia incidió al declararlo culpable por infracción al Artículo 6.09 de la Ley Núm. 168-2019, *supra*, pese a

---

[29] *Íd.*, pág. 111, líneas 8-17.
[30] *Íd.*, pág. 134, líneas 17-20; pág. 135, líneas 1-2.

que el pliego acusatorio imputaba una infracción al Artículo 6.05 del mismo cuerpo legal, *supra*.[31] Plantea que, aun cuando constituye un elemento del delito, el pliego acusatorio no alegaba que el arma ocupada fuese un arma larga semiautomática, una ametralladora, carabina o rifle, cualquier modificación de esas, un arma que pudiera ser disparada automáticamente, una escopeta de cañón cortado a menos de dieciocho (18) pulgadas, ni un artefacto que convirtiera en arma automática cualquier arma de fuego. Añade que, la alegación de que el arma era una "AR15" no bastaba para concluir que se trataba de un rifle, carabina o escopeta. No nos persuade.

Según es sabido, la acusación que debe emitir el Estado en casos graves, como el presente, debe contener "una exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común". 34 LPRA Ap. II, R. 35(c). Véase también, *Pueblo v. Pagán Rojas*, supra. A esos efectos, el ordenamiento jurídico no exige que el Estado emplee estrictamente la nomenclatura utilizada en la disposición legal aplicable.

En el presente caso, el pliego acusatorio del caso ISCR202100810 imputó al señor Irizarry Zapata lo siguiente:

> El referido acusado LUIS JOSÉ IRIZARRY ZAPATA, allá en o para el día 21 de abril de 2020 y en Mayagüez, Puerto Rico que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Mayagüez, ilegal, voluntaria, maliciosa y criminalmente, violó lo dispuesto en el Artículo 6.09 de la Ley de Armas de Puerto Rico. Consistente en que **POSE[Í]A, un arma de fuego AR-15 semiautomática, multi calibre, marca, Demons Tactical, número de serie DMT-DT418, sin estar autorizado por Ley para ello**. (Énfasis nuestro).

---

[31] Advertimos que, como parte de su alegato suplementario, el señor Irizarry Zapata modificó su segundo señalamiento de error, alegando entonces que el pliego acusatorio imputaba la comisión del Art. 6.08 de la Ley Núm. 168-2019, *supra*, y no la del 6.05 del mismo cuerpo legal, *supra*. No obstante, el apelante no solicitó autorización para dicha enmienda, por lo que esbozamos el señalamiento de error tal cual expuesto en el escrito de *Apelación*.

A juicio de esta Curia, el lenguaje empleado por el Estado en el referido pliego es claro, sencillo y cualquier persona de inteligencia común es capaz de comprender que se le imputa la posesión sin licencia de un arma semiautomática. Si bien es cierto que, el pliego no expresa literalmente que se trata de un arma larga, reiteramos que no es necesario que este sea redactado tal cual surge de la Ley Núm. 168-2019, *supra*. Además, resulta meritorio reconocer que, el Estado incluyó una descripción del modelo, la marca y el número de serie del arma, lo que hace aún más precisa su identificación.

Así pues, concluimos que este error tampoco fue cometido.

Habiendo resuelto lo anterior, pasamos a atender conjuntamente el señalamiento de error **c** del caso KLAN202500292, y el **único** señalamiento de error planteado en el caso KLAN202500386. En ambos, el apelante sostiene que el tribunal *a quo* erró al declararlo culpable, puesto que su culpabilidad no se probó más allá de duda razonable. No le asiste la razón.

Con respecto al Art. 6.09 de la Ley Núm. 168-2019, *supra*, el Estado venía obligado a demostrar que el apelante: (1) portaba o poseía; (2) sin autorización para ello; (3) un arma larga semiautomática, una ametralladora, carabina o rifle, cualquier modificación de esas, un arma que pudiera ser disparada automáticamente, una escopeta de cañón cortado a menos de dieciocho (18) pulgadas, o un artefacto que convirtiera en arma automática cualquier arma de fuego y, (4) que podía causar grave daño corporal. Adicionalmente, en cuanto al Art. 6.22 de la Ley Núm. 168-2019, *supra*, era necesario probar que, el señor Irizarry Zapata: (1) no tenía licencia de armas, ni de armero, ni era un agente de orden público y, (2) poseía municiones. En esa misma línea, y en lo que concierne al Art. 15 de la Ley Núm. 8 de 5 de diciembre de 1987, el Estado venía obligado a demostrar que el apelante: (1)

poseía, (2) un vehículo de motor, (3) a sabiendas de que fue obtenido mediante apropiación ilegal.

Para probar los elementos de los tres (3) delitos imputados al señor Irizarry Zapata, el Ministerio Público presentó varios testigos, particularmente, al Sargento Carlos R. Rodríguez Ibarra, (en adelante, Sgto. Rodríguez Ibarra), al Sargento Eduardo O. Quiñones Camacho, (en adelante, Sgto. Quiñones Camacho), al Sgto. Lamberty Aldea, al señor Aramis Agosto Vega, examinador de armas del Instituto de Ciencias Forenses (en adelante, señor Agosto Vega), y a la señora Sonia Ivette Cruz García, dueña de la guagua Toyota Rav4, (en adelante, señora Cruz García).

El Sgto. Rodríguez Ibarra testificó que, para la fecha de los hechos, laboraba como agente investigador de asuntos confidenciales en la División de Vehículos Hurtados del área de Mayagüez.[32] Relató que, ese día, fue asignado a realizar una investigación relacionada a una llamada confidencial junto al Sgto. Lamberty Aldea.[33] Como parte de dicha investigación, narró que, se dirigieron hacia el área de Río Cristal en Río Hondo[34], donde divisaron un vehículo Toyota Rav4 color vino (en adelante, la guagua) estacionado a orillas de la carretera.[35] Afirmó que, al verificar la tablilla de la guagua, constató que tenía un gravamen de hurto.[36]

El Sgto. Rodríguez Ibarra explicó que realizaron una vigilancia a la guagua por espacio de tres (3) horas.[37] Narró que, mientras vigilaban, observó al apelante salir de una residencia y acercarse a la guagua.[38] Detalló que, este realizó un gesto con la mano "como si

---

[32] TPO, Libro 1, pág. 43, líneas 1-9.
[33] *Íd.*, pág. 47, líneas 2-5; pág. 48, línea 20; pág. 49, líneas 1-5; pág. 63, líneas 13-20; pág. 64, líneas 1-3 y 9-15.
[34] *Íd.*, pág. 66, líneas 3-6, 20; pág. 67, líneas 1-3.
[35] *Íd.*, pág. 67, líneas 3-7.
[36] *Íd.*, líneas 8-9.
[37] *Íd.*, pág. 72, líneas 17-20; pág. 73, líneas 3-10.
[38] *Íd.*, pág. 73, líneas 15-19; pág. 74, línea 4-5.

tuviera un beeper abriendo" y observó cuando las luces de la guagua *flashearon*.[39] Añadió que, el señor Irizarry Zapata se montó a la guagua, bajó un poco los cristales, volvió a salir de esta, la cerró y entró nuevamente a la residencia.[40]

Explicó que, posteriormente, al intervenir con el apelante, este interrumpió al Sgto. Lamberty Aldea —quien le estaba verbalizando las advertencias correspondientes— y le expresó que, entendía lo que le estaba explicando, pero que había un bulto con un rifle dentro del vehículo.[41]

El Sgto. Rodríguez Ibarra indicó que, la guagua permaneció bajo su custodia y la del Sgto. Lamberty Aldea, hasta ser sellada y documentada por Servicios Técnicos.[42] Agregó que, estuvo presente al día siguiente cuando se diligenció una orden de registro y allanamiento a la guagua, en donde se ocupó un rifle color crema y municiones de rifle dentro de un bulto color negro.[43]

Por su parte, el Sgto. Quiñones Camacho declaró que, para el 21 de abril de 2020, laboraba en la División de Servicios Técnicos de Mayagüez.[44] Testificó que, en dicha fecha, recibió una llamada para que pasara a documentar mediante foto un vehículo hurtado. [45] Manifestó que, al llegar a lugar, observó una Toyota Rav4 color roja y se entrevistó con el Sgto. Lamberty Aldea.[46] Posteriormente, procedió a documentar la guagua mediante fotos.[47] Expresó que más adelante, también documentó, mediante fotografía, el diligenciamiento de la orden de registro y allanamiento a la guagua Toyota Rav4.[48]

---

[39] *Íd.*, pág. 74, línea 4-5.
[40] *Íd.*, líneas 5-11.
[41] *Íd.*, pág. 78, líneas 9-12; pág. 79, líneas 7-14.
[42] *Íd.*, pág. 84, líneas 11-16.
[43] *Íd.*, pág. 86, líneas 17-30; pág. 87, línea 1; pág. 88, líneas 2-4.
[44] TPO, Libro 2, pág. 10, líneas 16-18.
[45] *Íd.*, pág. 13, líneas 6-9.
[46] *Íd.*, pág. 14, líneas 15-20.
[47] *Íd.*, pág. 16, líneas 3-7.
[48] *Íd.*, pág. 56, líneas 16-20; pág. 57, líneas 1-6.

De otra parte, el Sgto. Lamberty Aldea, además de declarar sobre sus gestiones investigativas[49], atestó que, el 21 de abril de 2020, le asignaron una querella para investigación sobre una llamada confidencial.[50] Tras corroborar la información de la querella[51], procedió a realizar una investigación de campo con el Sgto. Rodríguez Ibarra en el barrio Río Hondo y la Urbanización Río Cristal.[52] Declaró que, mientras recorrían la urbanización, observó un vehículo con características similares a las que estaban en el documento (querella).[53] En específico, una guagua marca Toyota, modelo Rav4 color vino a la orilla de la carretera.[54] Manifestó que, al observar la tablilla de la guagua, constató que era la misma que aparecía en el documento (querella).[55]

Ante ello, procedió a estacionarse en un lugar estratégico para vigilar la guagua.[56] Narró que, durante la vigilancia, observó al señor Irizarry Zapata caminando en dirección a la guagua, las luces de esta encendieron, el apelante se montó, bajó el cristal del pasajero y se bajó nuevamente.[57] Testificó que, en una segunda ocasión donde volvió a ver al apelante[58], procedió a intervenir junto a su compañero.[59]

Explicó que, al acercarse, le indicó al señor Irizarry Zapata la razón de la intervención y comenzó a verbalizar las advertencias correspondientes.[60] Declaró que, mientras ello ocurría, el apelante lo interrumpió y le manifestó que entendía lo que ocurría con la

---

[49] Véase discusión del señalamiento de error **a**.
[50] TPO, Libro 3, pág. 101, líneas 17-20; pág. 102, líneas 2-7.
[51] *Íd.*, pág. 168, líneas 14-20; pág. 169, líneas 1-6.
[52] *Íd.*, pág. 170, líneas 5-13; pág. 172, líneas 3-7, 12-20; pág. 173, líneas 2-6.
[53] *Íd.*, pág. 173, líneas 11-15.
[54] *Íd.*, pág. 175, líneas 2-14.
[55] *Íd.*, líneas 14-19.
[56] *Íd.*, pág. 178, líneas 1-5.
[57] *Íd.*, pág. 178, líneas 8-17; pág. 179 10-16, 20; pág. 180, líneas 1-4; pág. 181, líneas 1-2; pág. 182, líneas 19-20; pág. 183, líneas 1-4.
[58] *Íd.*, pág. 185, líneas 14-20; pág. 186, líneas 1-4.
[59] *Íd.*, pág. 187, líneas 2-14.
[60] *Íd.*, pág. 189, líneas 12-19; pág. 192, líneas 1-2.

guagua, pero que dentro de esta, específicamente en el baúl, había un bulto con un rifle.[61]

El Sgto. Lamberty Aldea narró que, al próximo día, diligenció una orden de registro y allanamiento, abrió la guagua y, en el área del baúl, encontró un bulto color negro con un rifle en su interior, municiones, cargadores de rifle y de pistola, entre otros.[62] Específicamente, doscientas y un (201) municiones calibre 7.62 x 39 y un rifle AR15 color crema, marca Demon Tactical multicalibre, con número de serie DMT-DT418.[63]

Más adelante, a preguntas de la Fiscal Bravo Negrón, explicó que, como parte de su investigación, buscó en el sistema de licencia de armas y pudo constatar que el apelante no contaba con ninguna licencia de armas válida.[64]

Asimismo, el Ministerio Público presentó como testigo al señor Agosto Vega, examinador de armas de fuego del Instituto de Ciencias Forenses, quien explicó que, realizó un estudio pericial del arma para examinar su funcionamiento operacional, y concluyó que, el arma tenía la capacidad para disparar en semiautomático y automático.[65] Asimismo, afirmó que, realizó una prueba a las municiones y estas contenían todos los componentes de una bala munición.[66]

Por último, el Ministerio Público presentó el testimonio de la señora Cruz García, quien relató que, el 27 de febrero de 2020, dejó su guagua Toyota Rav4 por varias horas en un negocio ubicado en el municipio de Guaynabo y, al regresar, no la encontró.[67] Durante el interrogatorio directo, la Fiscal Bravo le mostró a la señora Cruz García los Exhibits A40, A19 y A24, y esta identificó que la guagua

---

[61] *Íd.*, pág. 194, líneas 1-7.
[62] TPO, Libro 4, pág. 9, líneas 2-19.
[63] *Íd.*, pág. 12, líneas 1-15; pág. 17, líneas 10-20.
[64] TPO, Libro 3, pág. 135, línea 2.
[65] TPO, Libro 5, pág. 196, líneas 6-12; pág. 200, líneas 4-5; pág. 220, líneas 7-10.
[66] *Íd.*, pág. 200, líneas 11-20; pág. 201, líneas 1-4.
[67] TPO, Libro 6, pág. 10, líneas 10-20.

que aparecía en dichas fotografías, a saber, la Toyota Rav4, era la suya.[68]

Además de la prueba testifical antes reseñada, el Ministerio Público presentó una serie de evidencia documental, incluyendo las fotografías tomadas por el Sgto. Quiñones Camacho sobre la intervención, el diligenciamiento de la orden de registro y allanamiento, y la prueba ocupada.[69] Además, este también presentó el arma de fuego y las municiones ocupadas.[70]

Una lectura íntegra de todos los testimonios antes reseñados, así como la evaluación de la prueba documental presentada por el Ministerio Público, establece certeramente que los elementos de todos los delitos imputados en todos los casos, y la conexión de éstos con el señor Irizarry Zapata, fueron demostrados más allá de duda razonable. Consecuentemente, concluimos que, los errores discutidos en los párrafos que anteceden no fueron cometidos.

Finalmente, en su señalamiento de error **d**, el señor Irizarry Zapata alega que, los errores a, b y c esbozados en el caso KLAN202500292, examinados en conjunto y, por su efecto acumulativo, demuestran que no tuvo un juicio justo e imparcial.

En primer orden, y toda vez que concluimos que dichos señalamientos de error no fueron cometidos, resulta inexistente cualquier efecto acumulativo.

En segundo orden, razonamos que, la TPO del juicio en su fondo demuestra que, el apelante tuvo oportunidad de contrainterrogar a los testigos que presentó el Ministerio Público, así como de confrontar la prueba presentada en su contra. De igual manera, la TPO refleja que, el Juez que presidió los procesos atendió todas y cada una de las objeciones levantadas por la defensa del

---

[68] *Íd.*, pág. 14, líneas 19-20; pág. 15, líneas 1-11, 16-20; pág. 16, líneas 1-9.
[69] Véase, Exhibit A1-A57, Exhibit B1-B18 y Exhibit C1-C80.
[70] Véase, Exhibit 9 y Exhibit 11.

señor Irizarry Zapata. Habida cuenta de ello, concluimos que el señalamiento de error **d** tampoco fue cometido.

En virtud de todo lo anterior, procede la confirmación de las sentencias apeladas.

**IV**

Por los fundamentos esbozados, se confirman las sentencias apeladas.

Notifíquese a las partes, al Procurador General y al Secretario del Departamento de Corrección y Rehabilitación. El Administrador de Corrección deberá entregar copia de esta *Sentencia* al señor Irizarry Zapata, en cualquier institución donde este se encuentre.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones